777 So.2d 1263 (2001)
Russell Clinton HILL, Plaintiff-Appellant,
v.
Jennifer Rose HILL, Defendant-Appellee.
No. 34,104-CA.
Court of Appeal of Louisiana, Second Circuit.
January 24, 2001.
*1264 Bobby L. Culpepper, Jonesboro, Counsel for Appellant.
Chris L. Bowman, Jonesboro, Counsel for Appellee.
Before BROWN, WILLIAMS and STEWART, JJ.
WILLIAMS, Judge.
In this child custody proceeding, the plaintiff, Russell Clinton Hill, appeals the trial court's judgment awarding the parties joint custody of the minor child and designating the defendant, Jennifer Rose Hill, as primary domiciliary parent. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
Russell Clinton Hill ("Rusty") and Jennifer Rose Hill were married on August 12, 1994 and established their matrimonial domicile in Jonesboro, Louisiana. One child, Andrew Dalton Hill, was born of the marriage on December 26, 1994. On August 23, 1999, the defendant left the matrimonial *1265 domicile with the minor child and moved to Many, Louisiana.
On August 23, 1999, the plaintiff filed a petition for divorce pursuant to LSA-C.C. art. 102. In his petition, the plaintiff requested sole custody of the minor child, and that the defendant be awarded reasonable visitation rights. In response to the plaintiff's petition, the defendant filed an answer and reconventional demand requesting that the parties be awarded joint custody of their minor child, and that she be designated primary domiciliary parent. On September 27, 1999, the trial court rendered an interim consent judgment, awarding the parties joint custody and designating the defendant as primary domiciliary parent. The plaintiff was awarded visitation from 4:00 p.m. on Fridays until 7:00 p.m. on Sundays for periods consisting of three consecutive weekends. The plaintiff was ordered to pay $300 per month as child support.
A hearing to determine custody was held on November 8, 1999. After the hearing, the trial court awarded the parties joint custody of the minor child, and designated the defendant as primary domiciliary parent subject to the joint custody implementation plan[1] submitted by the defendant. Additionally, the plaintiff was ordered to pay $265 per month as child support. The plaintiff's motion for a new trial was denied. The plaintiff appeals.

DISCUSSION
The plaintiff argues that the trial court abused its discretion in designating the defendant as primary domiciliary parent of the parties' minor child. According to the plaintiff, the trial court awarded custody to the defendant utilizing the "maternal preference rule." The plaintiff also contends the trial court incorrectly weighed the factors set forth in LSA-C.C. art. 134.
The primary consideration in rendering a child custody determination is always the best interest of the child. LSA-C.C. art. 131. In determining the best interest of a child in custody cases, there must be a weighing and balancing of factors favoring or opposing custody in respective competing parents on the basis of evidence presented in each particular *1266 case. Cooper v. Cooper, 579 So.2d 1159 (La.App. 2d Cir.1991); McKinley v. McKinley, 25,365 (La.App.2d Cir.1/19/94), 631 So.2d 45. The maternal preference rule and any presumption thereunder has been abrogated. No presumption or preference, from real life or fictitious stereotype, flows from the sex of the parent. Dubois v. Dubois, 532 So.2d 360 (La.App. 3d Cir.1988). The father and mother stand on equal footing at the outset and the role of the court is to determine the best interest of the child based on the relative fitness and ability of the competing parents in all respects to care for the child. Dubois v. Dubois, supra.
A court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). One important factor underlying the trial court's broad discretion in child custody cases is the trial court's better opportunity to evaluate the credibility of the witnesses. Windham v. Windham, 616 So.2d 276 (La.App. 2d Cir.1993). On appellate review, the trial court's determination of custody issues is afforded great weight, and its discretion will not be disturbed on review in the absence of a clear showing of abuse. Estes v. Estes, 261 La. 20, 258 So.2d 857 (1972).
Article 134 provides that the factors to be utilized in determining the best interest of the child in a custody dispute may include the following:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties, and
(12) The responsibility for the care and rearing of the child previously exercised by each party.
When a trial court has made a considered decree of permanent custody, the party seeking to modify the decree bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody, or of proving by clear and convincing evidence that any harm likely to be caused by a change of environment is substantially outweighed by the advantages to the child. Bergeron v. Bergeron, 492 So.2d 1193 (La.1986). A considered decree is one for which evidence as to parental fitness to exercise custody is received by the court. Evans v. Terrell, 27,615 (La.App.2d Cir.12/6/95), 665 So.2d 648, writ denied, 96-0387 (La.5/3/96) 672 So.2d 695. By contrast, a judgment with a custody plan that was entered by default, was not contested or was merely entered by consent of the parties is not a considered decree. Barnes v. Cason, 25,808 (La.App.2d Cir.5/4/94), 637 So.2d 607, writ denied, 94-1325 (La.9/2/94), 643 So.2d 149.
*1267 In the instant case, the plaintiff contends that the factors to be considered under LSA-C.C. art. 134 preponderate in his favor. Rusty argues that it is in Andrew's best interest to return to Jonesboro where he has lived since birth, has family and friends and has established positive relationships. Rusty contends that Andrew is happier in Jonesboro and if he is designated domiciliary parent, he would be able to adequately accommodate Andrew's needs.
In support of his argument, Rusty offered the testimony of Dr. Bobby Stephenson, an expert in psychology with emphasis on family evaluations. Dr. Stephenson recommended that Rusty be designated primary domiciliary parent. He testified that his recommendation was based on extensive evaluations of the parents and the child. However, Dr. Stephenson opined that both parties are "very good and caring parents." In his evaluation of the parties, Dr. Stephenson did not consider the work or school schedules of the respective parties. According to Dr. Stephenson, his job was to assess the situation in order to determine whether there was any significant problems in either of the parties psychological makeup. Because his assessment was limited to this area, Dr. Stephenson concluded that he would defer to the court to determine the best interest of the child.
Although the plaintiff contends that the factors set forth under Article 134 preponderate in his favor, the record reflects evidence which contradicts his contention. On cross examination, the plaintiff testified that, although he did not discourage Jennifer from taking Andrew to church, he rarely accompanied them to church because he did not agree with taking a child Andrew's age to church. Andrew was two years old at the time. Rusty testified that he did not believe that a child Andrew's age gains much from the sermon and "they didn't have anything but a nursery in the church and I did not want to take him to another day care to just let him sit while we sat in the congregation." Furthermore, Rusty admitted that he had not taken Andrew to church during his weekend visitations under the interim custody plan because "time is very scarce on the weekend." However, Rusty testified that, if the court designated him primary domiciliary parent, he was prepared to take Andrew to Children's Church on Wednesdays.
Rusty admitted that Jennifer took Andrew to the doctor when needed. He also admitted that when the doctor prescribed glasses for Andrew, he did not insist that Andrew wear his glasses. Furthermore, when Andrew was diagnosed with "lazy eye" and the doctor instructed that Andrew should wear an eye patch to correct the problem, Rusty did not insist that Andrew wear the patch. According to Rusty, he had the same condition when he was a child and wearing a patch did not help his condition. Therefore, he would not insist that Andrew wear a patch.
Due to the parties' work and school schedules that existed prior to their separation, Rusty's mother, Shirley Shankles, was Andrew's primary care giver. Mrs. Shankles testified that from Andrew's birth until he was approximately ten months old, she cared for him during the week, from 8:00 a.m. until approximately 6:00 p.m., while the parties were either working or in school. According to Rusty, if the court designated him primary domiciliary parent, he would change his work schedule to allow more time with Andrew because he believes that it is important that he and Andrew spend as much time together as possible.
Rusty testified that he was employed by the local newspaper during the day, and he worked at their family-owned gym from 3:30 p.m. until 8:00 p.m. during the week and on Saturday mornings. In response to his proposed schedule change, Rusty testified that "if it plays out," he would have to work only two late nights at the gym rather than four nights. He testified that the gym closes at 8:00 p.m. and the proposed changes would depend on whether *1268 he could find employees to work two late nights. Rusty testified that on the nights that he would have to work at the gym, Andrew would accompany Rusty to the gym and Mrs. Shankles would pick him up from the gym and take him to her house until the gym closed. Rusty testified that he would be available daily to take Andrew to school and pick him up. Mrs. Shankles also testified that she would be available to provide assistance to Rusty whenever she was needed.
Jennifer testified that it is in Andrew's best interest if she retains her designation as primary domiciliary parent. According to Jennifer, Andrew is in a stable environment with routine activities and he has a loving relationship with her and her parents. Jennifer testified that Andrew has become friends with several of his classmates and with other children outside of his school environment.
At the time of trial, Jennifer resided in Many, Louisiana with her parents who provided her with financial support. She was a senior enrolled at Northwestern State University in Natchitoches, Louisiana, pursuing a degree in accounting. Andrew was enrolled in the pre-kindergarten program at Negreet Elementary School. Jennifer's mother, Beverly Sally, was employed at Negreet High School as an Algebra teacher. Mrs. Sally drove Andrew to and from school daily. Jennifer testified that Andrew and her mother usually left for school at approximately 7:30 a.m. and returned at approximately 3:45 p.m. According to Jennifer, she attends class on Monday through Thursday and usually arrives home from school at approximately 4:30 p.m. She further testified that her class schedule allows her to complete her homework prior to leaving the college campus.
Jennifer testified that when she lived in Jonesboro, she felt that she was denied the opportunity to care for Andrew the way she wanted to care for him. According to Jennifer, Mrs. Shankles never gave either Jennifer or Rusty an opportunity to attend to Andrew's needs. Regarding one particular incident, Jennifer testified that the pediatrician recommended that she take Andrew off of the bottle because he was experiencing ear and sinus infections primarily due to the liquid staying in his ear canal after taking bottles at night prior to going to bed. According to Jennifer, during a one-week visit to her parents' home in Many, she successfully got Andrew to sleep without a bottle. However, once they returned to Jonesboro, the family members allowed him to have a bottle, and, as a result, he began experiencing disruptive sleeping habits.
In the instant case, neither party claimed, nor did the trial court find, that the other party was unfit. In its oral reasons for judgment, the trial court noted:
"[t]he child would be alright with anybody.... She's [Jennifer] having to do all the jobs I take it, be the good and be the bad one all in one.... I think the record indicates that he-the play is with the father, the work schedule is with the mother perhaps more so here."
Based on our review of the record, we conclude that the trial court did not abuse its discretion in maintaining the original joint custody award which designated the defendant as the domiciliary parent of the minor child.

CONCLUSION
For the foregoing reasons, the judgment of the trial court which maintained the defendant, Jennifer Rose Hill, as domiciliary parent of the minor child is affirmed. Costs of this appeal are assessed to the plaintiff, Russell Clinton Hill.
AFFIRMED.
NOTES
[1] The defendant submitted a "Proposed Joint Custody Implementation Plan," which included, but was not limited to, the following proposals:

(1) The defendant shall be designated as the primary domiciliary parent, having physical custody of the minor child for the nine school months of the year; with the plaintiff designated primary domiciliary parent, having physical custody of the minor child for three summer months of the year.
(2) The plaintiff shall enjoy visitation every 1st, 3rd, and 5th weekend while the minor child is in the custody of the defendant. The defendant shall enjoy visitation every 1st, 3rd, and 5th weekend while the child is in the custody of the plaintiff.
(3) The defendant shall enjoy visitation with the minor child on the 4th of July holiday in even years with the plaintiff enjoying said holiday during odd numbered years.
(4) The plaintiff shall enjoy visitation with the minor child from 4:00 p.m. on Wednesday before Thanksgiving until 5:00 p.m. on the Sunday after Thanksgiving during odd numbered years. The defendant shall enjoy visitation with the minor child from 4:00 p.m. on Friday before Thanksgiving until 5:00 p.m. on Wednesday before Thanksgiving during even years.
(5) The Easter/Spring break holiday shall be divided between the parties, with the defendant enjoying visitation during the first half of the holiday in odd numbered years, and the plaintiff shall enjoy visitation during the first half of the holiday during even numbered years.
(6) The plaintiff shall enjoy visitation with the minor child from 4:00 p.m. on the day the child begins Christmas break until 9:00 p.m. on Christmas Eve in even numbered years, and from 9:00 p.m. on Christmas Eve until 5:00 p.m. on December 30 during odd numbered years.
(7) The defendant shall enjoy visitation with the minor child on every Mother's Day weekend and the plaintiff shall enjoy visitation on every Father's Day weekend.
(8) The parties will alternate the child's birthday with the plaintiff enjoying visitation during even numbered years and the defendant entitled to visitation during odd numbered years.