786 So.2d 944 (2001)
Analiza VERRET, Plaintiff-Appellee,
v.
Raymond VERRET, Defendant-Appellant.
No. 34,982-CA.
Court of Appeal of Louisiana, Second Circuit.
May 9, 2001.
*946 Onebane, Bernard, Torian, Diaz, McNamara & Abell by Frank H. Spruiell, Jr., Shreveport, Counsel for Appellant.
Susan D. Scott, Shreveport, Counsel for Appellee.
Before NORRIS, BROWN and GASKINS, JJ.
GASKINS, J.
The defendant, Raymond Verret, appeals a trial court judgment granting sole custody of the parties' daughter to the plaintiff, Analiza Verret Tucker, and ordering the defendant to pay child support. We amend, and as amended, affirm the trial court judgment.

FACTS
Mr. Verret is in the United States Air Force and met the plaintiff while stationed in the Philippines. They married on September 20, 1991, and later established their matrimonial domicile in Caddo Parish when Mr. Verret was stationed at Barksdale Air Force Base. One child, a daughter, was born of the marriage. The parties separated on October 10, 1996. The plaintiff filed a petition for divorce on December 30, 1996.
On April 10, 1997, Mr. Verret filed an answer and reconventional demand alleging that his wife had a gambling problem, had neglected the child, and engaged in an unfit lifestyle. He sought a divorce, asked to be named domiciliary parent, and requested use of the family home.
A rule to show cause on these issues was heard on May 20, 1997. On June 10, 1997, a judgment was filed granting a divorce in favor of Mr. Verret. Included in the judgment was a consent decree specifying that the parties would have joint custody, with Mr. Verret designated as the domiciliary parent. The mother was ordered to pay $168.75 in child support every two weeks. The order specified certain persons to whom the plaintiff was not to expose the child, including her boyfriend, Matthew Tucker, until such time as he married the mother. The plaintiff was ordered to obtain a two-bedroom apartment within six months of the order, so that the child could have a room when visiting with her. No restriction was placed upon Mr. Verret being transferred out of state, but he was to notify the child's mother within 30 days of the transfer, and the parties were to attempt to modify the joint custody plan concerning visitation. Should the parties not be able to agree, the plaintiff was to seek a court order.
On December 28, 1998, the plaintiff filed a petition for change of custody, alleging that Mr. Verret left Louisiana with the child without notifying her of his whereabouts. She claimed that he called on November 18, 1998, from out of state and refused to let the child speak to her. The plaintiff claimed that she had not had visitation with the child since October 31, 1998, and that Mr. Verret did not supply her with an address or phone number where he was living with the child. The plaintiff asserted that she had married Mr. Tucker and was willing and able to care for and support the child. She asked that the prior custody decree be vacated and that she be named domiciliary parent, with reasonable visitation rights to Mr. Verret, *947 and that her child support obligation be terminated.
On February 26, 1999, Mr. Verret filed a rule seeking sole custody of the child, requesting that Mrs. Tucker be found in contempt of court for failure to fulfill any of the terms of the joint custody agreement, and ordering her to pay past due child support. He claimed that Mrs. Tucker violated the joint custody agreement by leaving the child with persons not approved by him; being convicted of a battery on Mr. Verret, thus rendering it impossible to work with her as to joint custody; neglecting the child by failing to visit her; having a gambling problem; failing to use proper child safety restraints in her vehicle; allowing the child to be around persons barred from contact with the child in the joint custody agreement; failing to obtain a two-bedroom apartment; forging Mr. Verret's name to a check; failing to pay half of the medical bills presented to her; and failure to pay child support.
The matter came before the court on March 16, 1999. At the hearing, Mr. Verret testified that he moved to Pensacola, Florida, in November 1998. He claimed that in October 1998 he told Mrs. Tucker he was being transferred out of state. He acknowledged that he did not allow visitation between Mrs. Tucker and the child before leaving the state, did not allow the child to talk to her mother by phone over Thanksgiving or Christmas, and had not sent any of the child's grades or school work to the plaintiff. He acknowledged that he did not approve of his former wife's friends, but denied being prejudiced against Mrs. Tucker's husband and denied using racial slurs in front of the child. He also admitted that the child had been treated for pinworm and had picked up some bad language at school. The court entered an interim custody order, suspending the 1997 joint custody agreement.
The court ordered that the parties each keep the child for one-month periods from April to July 1999, with the exchange to occur in Baton Rouge. Susan Vigen, PhD, was appointed to do a child custody evaluation on the child and the parties, to be concluded, if possible, by June 15, 1999. Mrs. Tucker's child support obligation was suspended in the interim.
On May 19, 1999, Mr. Verret filed a motion to dissolve the interim custody decree, claiming that Mrs. Tucker failed to enroll the child in school in Louisiana and she was in danger of failing K 5 unless she returned to Florida to attend summer school. The petition requested that the former joint custody plan be resumed. Mr. Verret asked for either an ex parte order or a rule to show cause on his request.
On June 21, 1999, the court entered an order noting that the parties agreed that Mr. Verret's motion to dissolve the interim judgment be denied, and that the interim judgment would remain in full force and effect until a final hearing on the matter. Another psychologist, Dr. Webb Sentell, was appointed to aid Dr. Vigen in performing an evaluation of the child and the parties. The parties were ordered to set the matter for a final hearing as soon as the evaluations were completed.
All pending motions came before the court for hearing on June 29, 2000. Mr. Verret testified and exhibited an extremely combative attitude toward his former spouse. Although he denied belittling Mrs. Tucker's husband in front of the child, he admitted telling the child that her mother was a lesbian and a whore, and that she didn't have to do what her mother told her to do. He admitted getting Mrs. Tucker fired from her job at Horseshoe Casino on allegations that she forged his name to a check and then later he helped her get the job back. He stated that he *948 wrote a letter to Matthew Tucker in which he made numerous odious and inflammatory allegations against Mrs. Tucker. The allegations were not substantiated and Mr. Verret admitted that he did this in an attempt to damage the Tuckers' marriage. Mr. Verret also acknowledged that he wrote a letter to immigration authorities, attempting to have Mrs. Tucker deported. He testified that when his former spouse called to speak to the child she would frequently get the answering machine. He stated that he could not return her calls because she had a call block on the phone. In later questioning, he stated that the block is only for collect phone calls. He said that he refused to pay for calls to Mrs. Tucker. Mr. Verret testified that while Mrs. Tucker had the child over the Christmas holiday in 1999, she refused to let him speak to her. Mrs. Tucker denied this and affirmatively stated that Mr. Verret spoke with the child on Christmas.
Mr. Verret was questioned about his demeanor and attitude in court at this hearing and at the prior hearing which led to the interim custody order. At one point the court cautioned Mr. Verret regarding his emotional and unresponsive answers. Mr. Verret stated that when threatened with losing his daughter, he seems "mentally imbalanced."
Mrs. Tucker testified that she is employed as a floor supervisor at the Horseshoe Casino. She stated that her ex-husband uses bad language in front of the child but that her current husband has a good relationship with her daughter. She acknowledged plans to enroll the child in private school if named domiciliary parent. Mrs. Tucker said that if she is designated the domiciliary parent, she would be forthcoming with information for Mr. Verret regarding the child. She also claimed to be able to provide for the child's needs. Mrs. Tucker asserted that her former husband refuses to communicate with her and conveys information to her largely through the child. According to Mrs. Tucker, she requested summer visitation with the child for the year 2000, but her ex-husband did not respond.
Mrs. Tucker claimed that Mr. Verret did not tell her that he was moving to Florida. She became aware of their departure when she discovered that their house was empty and the phone was disconnected. She called his parents and they refused to tell her where Mr. Verret and the child were. Mrs. Tucker continued to make inquiries until she located Mr. Verret at a military base in Florida. She stated that at that time, Mr. Verret told her that she could not see her daughter unless she signed over half of her 401-K retirement account to him. He also told her that the child did not remember her anymore and that he had told the child that her mother had died in a car accident. She claimed that she fell behind on her child support payments when Mr. Verret got her temporarily fired from her job. She admitted pleading guilty in January 1998 to committing a battery on Mr. Verret, but claimed that he "set her up." Mrs. Tucker stated that she kept the child for two weeks over the Christmas holiday in 1999 and flew back to Florida with the child. Mrs. Tucker missed her return flight because Mr. Verret could not be located timely, even though he knew she had a short time to catch her flight.
Mrs. Tucker testified that, after Mr. Verret's visit with Dr. Vigen, he stated that Dr. Vigen told him that he would win the custody battle because he was the better parent.[1] Dr. Vigen was not called *949 to testify by either party. The evaluations of the parties were filed into the record.
Matthew Tucker testified that he married Mrs. Tucker on November 28, 1998. He works for the Shreveport Fire Department and is employed part-time at Isle of Capri Casino. The Tuckers live in a three-bedroom home. Mrs. Tucker moved into the house with him after the 1997 consent judgment and prior to their marriage. Mr. Tucker testified that the claims made by Mr. Verret regarding the plaintiff were not true. He testified that the child visited in the Tucker home for approximately two weeks over the Christmas holiday in 1999.
The trial court issued lengthy oral reasons for its decision, awarding sole custody of the child to Mrs. Tucker, with visitation to Mr. Verret. The court took issue with the statements allegedly made by Dr. Vigen to Mr. Verret. The court further noted that it was "very, very difficult to read Dr. Vigen's report and come up with the conclusions that Dr. Vigen came up with." The court noted that the prior custody decree in 1997 was a consent decree and not a considered decree, therefore the standard to be applied was the best interest of the child. The court enumerated the factors listed in La. C.C. art. 134 to be considered in determining the best interest of the child. As to love, affection, and emotional ties of the parties to the child, the court noted that the child is very close to Mr. Verret, but found that Mr. Verret had fostered such a relationship to the exclusion of the child's mother. However, in spite of the terrible things the father told the child, she still wanted to see her mother. The court considered that both parties possess the capacity and disposition to give love, affection, and spiritual guidance and to continue the education and rearing of the child. The court stated that the father loves the child obsessively. The court found that both parents could care for the child's material needs such as food, clothing and medical attention. According to the court during the past three years when the child lived with the father, he did not provide a stable environment because he put pressure on the child. The court found that either parent could provide a permanent family unit for the child. As to moral fitness, the court found nothing of concern as to the mother, but stated that the father is a liar. The court considered the physical health of the parties and expressed concern about the father's mental state. The court found him to be controlling, with a need to dominate and a thirst for revenge. The court ordered that the father seek mental health treatment. The court noted that the child was doing well in school. Regarding the preference of the child, the court stated that it would not ask her due to the father's "brainwashing." The court found that the mother had a willingness and ability to facilitate and encourage a close and continuing relationship between the child and the father, a quality that Mr. Verret did not possess regarding Mrs. Tucker. Because of the distance between the residences, the court found that joint custody would not be practical. As to the responsibility for the care and rearing of the child previously exercised by the parties, the court found that Mr. Verret never gave Mrs. Tucker a chance to care for the child stating, "Everything had to be on bended knees and crawling just to satisfy his weird thirst for vengeance."
The court awarded sole custody of the child to Mrs. Tucker, with visitation to the *950 father as outlined by Mrs. Tucker's counsel. The father was granted monthly weekend visitation; six weeks in the summer; Christmas vacation in odd numbered years from the release from school until December 26, in even numbered years from December 26 until the return to school; and spring break in odd numbered years. Mr. Verret was ordered to seek psychiatric counseling within 30 days as a prerequisite to exercising his visitation rights. Mr. Verret's attorney was instructed to furnish the court with documentation that his client had complied with the court's order to seek "counseling for his overaggressive behavior, overcontrolling behavior, his pure meanness." The father was ordered to pay $625.25 per month in child support with a $200.00 credit per month until the mother's support arrearage was satisfied. On September 6, 2000, the trial court filed a judgment incorporating its oral decision. Mr. Verret appealed the trial court judgment, urging numerous assignments of error.

INTERIM CUSTODY ORDER
Mr. Verret contends that the trial court was without authority to enter the interim order of custody in March 1999, during the existence of the consent judgment of June 1997. He cites Tabuchi v. Lingo, 588 So.2d 795 (La.App. 2d Cir. 1991), for the proposition that a court may not enter an ex parte custody decree. He acknowledges that he had notice and was served with pleadings. He complains that a full hearing was not held; the court heard only a few minutes of testimony from him. Mr. Verret recognized that the interim custody order became moot when it expired by its own terms. However, he argues that "the entry of the interim order clearly set in motion a chain of events which led to Mr. Verret losing the status of domiciliary parent." This argument is without merit.
The interim custody order was entered by the trial court on March 16, 1999. As conceded by Mr. Verret, this was not an ex parte order, therefore the reasoning of Tabuchi is not applicable. Further, Mr. Verret has not properly sought review of the interim custody decree. He filed in the trial court a motion to dissolve the decree, but then agreed to the June 21, 1999 dismissal of that motion. The record shows that Mr. Verret acquiesced in the continuation of the custody decree and did not seek review of the trial court decision in this court. The appeal presently before us concerns the considered custody decree of September 6, 2000. Therefore, the issue of the interim custody decree is not properly before this court for review and will not be considered.

SCOPE OF THE PLEADINGS
Mr. Verret argues that the trial court exceeded its authority in making an award of sole custody to Mrs. Tucker when she had not requested it. This argument has merit.
This court has consistently held that a trial court exceeds its authority in awarding sole custody to a party who seeks in the pleadings only joint custody. Stephens v. Stephens, 30,498 (La.App.2d Cir.5/13/98), 714 So.2d 115; Havener v. Havener, 29,785 (La.App.2d Cir.8/20/97), 700 So.2d 533. See and compare Curtis v. Curtis, 34,317 (La.App.2d Cir.11/1/00), 773 So.2d 185. A judgment rendered beyond the pleadings is a nullity. Havener v. Havener, supra. However, the trial court has discretion to allow enlargement of the pleadings to conform to the evidence. La. C.C.P. art. 1154; Stephens v. Stephens, supra.
La. C.C.P. art. 862 grants the trial court authority to render a final judgment granting the relief to which the party in *951 whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings. Nothing in the article is intended to confer jurisdiction on a court to decide a controversy which the parties have not regularly brought before it. Havener v. Havener, supra; Stephens v. Stephens, supra.
The facts of the present case are similar to those in Havener v. Havener, supra. In the case sub judice, the relief sought by Mrs. Tucker was to be designated as domiciliary parent under a continuation of joint custody. She never filed any pleadings or declared a request for sole custody in writing or verbally in the trial court. Further, the evidence did not expand the pleadings to allow the award of sole custody to Mrs. Tucker. The trial court exceeded its authority in making the award.
Accordingly, we amend the judgment to vacate the award of sole custody to Mrs. Tucker. For the reasons set forth below, we award joint custody of the child to Mrs. Tucker and Mr. Verret and designate Mrs. Tucker as the domiciliary parent.

EXPERT OPINIONS
Mr. Verret urges that the trial court improperly and unjustifiedly disregarded and ignored the report and recommendation of the court appointed mental health professionals. This argument is without merit.
After weighing and evaluating expert and lay testimony, the trial court may accept or reject the opinion expressed by any expert. The weight given expert testimony is dependent upon the professional qualifications and experience of the expert and the facts upon which the opinion is based. The trial court has the discretion to substitute its common sense and judgment when such a substitution appears warranted upon the record as a whole. Curtis v. Curtis, supra; Goodwin v. Goodwin, 618 So.2d 579 (La.App. 2d Cir.1993), writ denied, 607 So.2d 8 (La. 1992).
On October 25, 1999, Dr. Vigen and Dr. Sentell submitted a joint report to the trial court detailing their evaluations of the parties and the child. They considered the child's expressed desire to live with her father. They also noted comments made by the child which may have been heard from adults. The child stated that her father told her not to like Matthew Tucker because he was not her father, that her father raised her, that her father cares more about her than her mother does, and that she will never get to see her father if her mother wins in court. The experts noted that Mr. Verret is untrusting of Mrs. Tucker, that he has a highly controlling nature, and he desires to minimize the child's contact with her mother. The experts also found that Mrs. Tucker desires to minimize the child's contact with Mr. Verret. The experts then found that, in spite of past disagreements, "there are no compelling factors which indicate that Mr. Verret and Mrs. Tucker are incapable of communicating with one another" regarding the child. The report recommended joint custody, with Mr. Verret designated as domiciliary parent. The report provides that if Mr. Verret was designated as domiciliary parent, any unwillingness on his part to honor the parental rights of Mrs. Tucker would be viewed most unfavorably.
Based upon the evidence and testimony adduced at the hearing, the trial court specifically rejected the findings and recommendations of the experts. As stated earlier, the court was concerned about comments allegedly made by Dr. Vigen to Mr. Verret. The court also concluded that the findings and recommendations were inconsistent. We note that, even though *952 Mr. Verret complains that Dr. Vigen was not given a chance at trial to answer the court's concerns, she was not called to testify by either party. The trial court had before it all the testimony and evidence in addition to the evaluations of the experts. The court was able to observe the demeanor of the witnesses and to make its own determinations. In light of the obvious hostility of the father toward the mother and his attempts to limit the child's contact with her, the trial court did not abuse its discretion in rejecting the experts' evaluation and recommendation. Considering these factors, the trial court's decision not to follow the recommendations of Dr. Vigen and Dr. Sentell was not an abuse of discretion.

CHANGE OF CUSTODY
Mr. Verret asserts that the change of custody was an abuse of the trial court's discretion. He acknowledges that his move to Florida constituted a change in circumstances, but does not agree that a change of custody to the mother was in the child's best interest. He claims that the court ignored the child's stated desire to live with her father. He contends that he provided a stable and adequate environment for the child. He disputes the trial court's statements that he "brainwashed" the child against the mother or that he pressured the child to take his side against Mrs. Tucker. Mr. Verret also asserts that the trial court did not give adequate consideration to the child's good school record. Mr. Verret disputes the trial court's finding that he is lacking in moral fitness. He claims that the problems Mrs. Tucker complained of, such as getting her fired at Horseshoe, occurred for the most part before Mrs. Tucker consented to Mr. Verret being the domiciliary parent in the 1997 consent decree.
Mr. Verret objects to the court's characterization that he was mentally imbalanced, ordering him to seek psychiatric counseling before he could exercise visitation with the child. He contends that he has plenty of time to spend with his daughter whereas Mrs. Tucker's work schedule would make it harder for her to be available to care for the child. He seeks reversal of the trial court judgment and reinstatement as domiciliary parent, with ample visitation for Mrs. Tucker. These arguments are without merit.
The prior custody arrangement between the parties was set forth in a consent judgment. Even in the absence of a considered decree, the party seeking to modify a joint custody arrangement must still prove a change in circumstances and that the modification would be in the best interest of the child. Goodwin v. Goodwin, supra.
The best interest of the child is the paramount consideration in child custody cases. La. C.C. art. 131; McIntosh v. McIntosh, 33,908 (La.App.2d Cir.8/31/00), 768 So.2d 219; Ezell v. Kelley, 535 So.2d 969 (La.App. 2d Cir.1988). La. C.C. art. 134 provides that the factors to be utilized in determining the best interest of the child in a custody dispute may include the following:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, *953 and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
The court is not bound to make a mechanical evaluation of all the statutory factors listed in La. C.C. art. 134, but should decide each case on its own facts in light of those factors. The court is not bound to give more weight to one factor over another, and when determining the best interest of the child, the factors must be weighed and balanced in view of the evidence presented. Rogers v. Stockmon, 34,327 (La.App.2d Cir.11/1/00), 780 So.2d 386 .
The factors listed in La. C.C. art. 134 are not exclusive, but are provided as a guide to the court, and the relative weight given to each factor is left to the discretion of the court. When determining the best interest of the child, there must be a weighing and balancing of factors favoring or opposing custody in respective competing parents on the basis of the evidence presented in each case. Hill v. Hill, 34,104 (La.App.2d Cir.1/24/01), 777 So.2d 1263; McIntosh v. McIntosh, supra; Rogers v. Stockmon, supra.
One important factor underlying the trial court's broad discretion in child custody cases is the court's better opportunity to evaluate the credibility of the witnesses. On appellate review, the trial court's determination of custody issues is afforded great weight, and its discretion will not be disturbed on review in the absence of a clear showing of abuse. Hill v. Hill, supra.
In the present case, the trial court considered all the factors enumerated in La. C.C. art. 134, as well as evaluating the credibility of the witnesses. The court found that both parents love the child and can provide for her physical and emotional needs. However, the degree of animosity displayed by the father toward the mother and his extensive efforts to undermine the mother-child relationship, including the denial of visitation to the mother, figured prominently in the court's decision to change the prior custody arrangement.
Mrs. Tucker showed a change in circumstances through Mr. Verret's move to Florida. Also, Mr. Verret's efforts to thwart Mrs. Tucker's relationship with the child demonstrated that a change in the custody arrangement would be in the best interest of the child.
We note that Mr. Verret presented little or no evidence or testimony at trial to support the serious allegations made against Mrs. Tucker in his pleading seeking sole custody. The defendant also argues that several factors considered by the trial court in altering the custody award occurred before the consent decree in 1997. Mr. Verret argues that this evidence and testimony should not have been considered by the court. Mr. Verret did *954 not show that any of the factors raised by Mrs. Tucker occurred before the consent decree. No objection was made to the admission of such evidence in the trial court. Evidence of incidents prior to entry of a stipulated judgment may not be relevant to prove a change of circumstances, but may nevertheless remain relevant on the issue of best interest of the child. The trial court should not exclude evidence in a custody modification proceeding if that evidence is relevant and material to an issue which the parties have not had a full and fair opportunity to litigate. Crowson v. Crowson, 32,314 (La. App.2d Cir.9/22/99), 742 So.2d 107; Bracy v. Bracy, 32,841 (La.App.2d Cir.10/27/99), 743 So.2d 930, writ denied, 99-3325 (La.12/17/99), 752 So.2d 169.
After a full review of the record in this case, we conclude that the trial court did not err in revoking Mr. Verret's designation as domiciliary parent.[2]

VISITATION
Mr. Verret argues that the visitation awarded by the trial court is insufficient. He requests the entirety of the child's summer vacation, with the exception of a period of time for the child to go on vacation with Mrs. Tucker. He also seeks monthly weekend visitation and a substantial portion of holiday vacations, in addition to spring break every year.
In visitation matters, as in custody, much discretion is vested in the trial judge, whose decision will not be disturbed absent an abuse of discretion. Curtis v. Curtis, supra; Duvalle v. Duvalle, 27,271 (La.App.2d Cir.8/23/95), 660 So.2d 152; Harper v. Harper, 33,452 (La.App.2d Cir.6/21/00), 764 So.2d 1186.
As set forth above, the trial court granted ample visitation to Mr. Verret. He was allowed one weekend per month, six weeks in the summer, half of the Christmas holiday every year and spring break every other year. In her brief, Mrs. Tucker concurs that Mr. Verret should also be allowed visitation at Thanksgiving every other year. Accordingly, in addition to the visitation previously awarded by the trial court, we amend the judgment to allow Mr. Verret additional visitation in even numbered years at Thanksgiving from the release from school until the return to school.

CONCLUSION
For the reasons stated above, the trial court judgment is amended to award joint custody to the parties with Mrs. Tucker designated as the domiciliary parent.
All provisions of the custody implementation plan of the trial court judgment are to remain in effect with the amendment of additional visitation over Thanksgiving to Mr. Verret in even numbered years, from the release from school to the return to school. The judgment of the trial court is affirmed in all other respects.
Costs are assessed equally between the parties.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] The judge expressed ethical concerns which would be present if Dr. Vigen had in fact made this communication. However, the record indicates that Mr. Verret may have been exaggerating in his comments to Mrs. Tucker.
[2] Because we amend the trial court judgment to grant joint custody and designate Mrs. Tucker as the domiciliary parent, we do not reach Mr. Verret's argument that if the trial court judgment is reversed, the matter should be remanded for determination of Mrs. Tucker's child support obligation.