NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 20-597

JOSHUA CHRISTOPHER SMITH

VERSUS

LAURA BABIN SMITH

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2016-703
HONORABLE LILYNN ANNETTE CUTRER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

BILLY HOWARD EZELL
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Chief Judge, Billy Howard Ezell, and D. Kent
Savoie, Judges.

AFFIRMED.

**John Green, Jr.**
**Law Offices of John Green, Jr.**
**1135 Hodges St.**
**Lake Charles, LA 70601**
**(337) 990-0060**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Joshua Christopher Smith**

**Shane K. Hinch**
**Heath J. Dorsey**
**Hinch and Associates**
**201 W. College St., Ste. A**
**Lake Charles, LA 70605**
**(337) 940-9224**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Laura Babin Smith**

**Lawrence Sean Corcoran**
**Corcoran Law Firm**
**940 Ryan Street**
**Lake Charles, LA 70601**
**(337) 602-6214**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Laura Babin Smith**

**EZELL, Judge.**

In this matter, Josh Smith appeals the decision of the trial court below granting sole custody in favor of Laura Babin and granting him limited, supervised visitation. For the following reasons, we hereby affirm the decision of the trial court.

Josh and Laura were married in October 2010 and had one child, Ava, born in 2015. The couple filed for divorce in 2016. At that time, a stipulated judgment was entered concerning visitation of Ava which, required Josh to "participate in an anger management assessment with Eddie Windham." [1] Mr. Windham recommended Josh participate in a twenty-six-week domestic violence program, but Josh refused to do so. In December 2017, Laura filed a rule for modification of custody, seeking to require Josh enroll in the program. Another consent judgment was issued April 24, 2018, altering some ancillary custody issues, but Josh's enrollment in the program was not addressed.

In October 2018, Josh began dating Strawberry Leger, and the couple married in January 2019. The couple's marriage was short and tumultuous. In June 2019, the day before Father's Day, months of fighting culminated in police being called to the couple's home when Josh slammed Strawberry's foot in a door while throwing her out of the house during a long argument. Ava was present for and witnessed that event. When Laura learned of the situation, she filed an ex parte motion seeking sole custody of Ava, based on the alleged domestic violence against Strawberry and claiming that Josh had acted similarly during their marriage.

---

[1] Mr. Windham is a licensed clinical social worker admitted as an expert at trial in anger management and domestic abuse.

After trial on the motion, the trial court found Josh's behavior towards Laura and Strawberry was abusive and that Ava's best interest lay in Laura having sole custody. The trial court granted limited, supervised visitation to Josh, contingent upon him entering and completing a domestic violence program. From that decision, Josh appeals.

On appeal, Josh asserts three assignments of error. He claims the trial court erred in finding the events that preceded the consent judgments with Laura constituted a material change in circumstances sufficient to alter custody and/or that Laura failed in proving a change in circumstances; that the trial court erred in not applying the clear and convincing evidence standard in awarding sole custody; and that the trial court erred in failing to award reasonable visitation.

In his first assignment of error, Josh claims that the trial court erred in finding the actions that predated the consent judgments of August 22, 2016, and April 24, 2018, served as material changes in circumstances after those agreements were reached. We disagree.

A party seeking to modify custody established by a consent judgment must prove that there has been a material change in circumstances since the original decree and that the proposed modification is in the best interest of the child. *D'Aquilla v. D'Aquilla*, 03-2212 (La.App. 1 Cir. 4/2/04), 879 So.2d 145, *writ denied*, 04-1083 (La. 6/25/04), 876 So.2d 838; *Evans v. Lungrin*, 97-541, 97-577 (La. 2/6/98), 708 So.2d 731. Josh claims that the trial court relied upon the fact that he had not completed the domestic violence program recommended by Mr. Windham during the divorce proceedings with Laura, though this failure to follow the recommendation was known, and even brought to court, prior to the April 2018 consent judgment. He also claims that he had obsessive-compulsive disorder

(OCD), which was known by Laura during the marriage and prior to the consent judgment. These are gross misrepresentations of the trial court's reasoning.

The record before this court shows that, while the trial court did mention his failure to complete the domestic violence program recommended by Mr. Windham as an *additional* factor in its decision, the primary event cited by the trial court as a material change in circumstances was the Father's Day domestic violence incident against Strawberry, which Ava was present for, and which happened well after the latest consent judgment was issued. The domestic violence incident alone more than qualifies as a material change in circumstances for custody purposes, especially in light of the fact that the child witnessed the event, and the trial court committed no error in finding that a material change in circumstances occurred. We also disagree with Josh's claims that Laura failed to prove a material change in circumstances, as the record unmistakably shows the toxic and abusive nature of his relationship with Strawberry, as discussed more fully below.

Additionally, Josh's claim that his OCD was the mental health concern cited by the trial court is another misrepresentation of the record. While Laura had been told by Josh that he thought he had OCD during the marriage, he never sought treatment or medication for that issue. However, in citing mental health concerns in its reasons, the trial court explicitly referred to the new, post-consent judgment issues he sought treatment for after his marriage to and separation from Strawberry. The record indicates that after the domestic violence incident with Strawberry on Father's Day, Josh sought counselling at the Institute for Neuropsychiatry in Lake Charles, Louisiana. His July 19, 2019 initial assessment there noted Josh as having episodic mood disorder, depression disorder, general anxiety disorder, post-traumatic stress disorder, in addition to OCD. He began receiving medications for

3

anxiety at that time. Those mental health issues are undeniably the ones addressed by the trial court in its reasons, not merely the OCD, and they arose or became known well after the last consent judgment with Laura. Josh's escalating mental health issues are unequivocally a material change in circumstances occurring since the most recent consent judgment. Thus, the trial court did not err in finding a material change in circumstances existed, especially when the trial court took these mental health issues in conjunction with the Father's Day domestic violence incident. This assignment of error is devoid of merit.

Josh next claims that the trial court erred in failing to apply the clear and convincing evidence standard before awarding sole custody to Laura. We disagree.

In *Griffith v. Latiolais*, 10-754, pp. 17-18 (La. 10/19/10), 48 So.3d 1058, 1070, our supreme court set forth the burden of proof in a proceeding for sole custody:

> A trial court's factual findings may only be overturned if manifestly erroneous. Pursuant to the 1993 Revisions to the child custody provisions, joint custody is no longer presumed to be in the best interest of the child; however, it is mandated unless (1) there is an agreement between the parents to the contrary which is in the best interest of the child, or (2) one parent shows by clear and convincing evidence that sole custody to that parent would serve the best interest of the child. La. C.C. art. 132. . . . "The clear and convincing standard requires a party to prove the existence of a contested fact is highly probable, or much more probable than its non-existence." [*Talbot v. Talbot*, 03-814 (La. 12/12/03), 864 So.2d 590, 598 (citing Succession of Lyons, 452 So.2d 1161, 1165 (La.1984) and *McCormick on Evidence*, § 340(b), p.798 (2d ed.1972)) ].

"To prove a matter by clear and convincing evidence means to demonstrate the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence." *Harper v. Harper*, 33,452, p. 6 (La.App. 2 Cir. 6/21/00), 764 So.2d 1186, 1190.

4

The standard of review in child custody matters has been clearly stated by this court in *Hawthorne v. Hawthorne*, 96-89, p. 12 (La.App. 3 Cir. 5/22/96), 676 So.2d 619, 625, *writ denied*, 96-1650 (La. 10/25/96), 681 So.2d 365:

> The trial court is in a better position to evaluate the best interest of the child from its observances of the parties and witnesses; thus, a trial court's determination in a child custody case is entitled to great weight on appeal and will not be disturbed unless there is a clear abuse of discretion.

In resolving custody issues, the primary consideration is whether the custody arrangement is in the best interest of the child. La.Civ. Code arts. 131, 134. Louisiana Civil Code Article 134 sets out fourteen non-exclusive factors for the court to consider in awarding custody. The trial court is not bound to make a perfunctory evaluation of all the factors in La.Civ.Code art. 134, but should decide each case on its own facts in light of those factors. *Robertson v. Robertson*, 10-926 (La.App. 5 Cir. 4/26/11), 64 So.3d 354. These factors are not exclusive but are provided as a guide to the trial court, and the relative weight given to each factor is left to the discretion of the trial court. *Id*. Each child custody case must be viewed considering its own particular set of facts and circumstances with the paramount goal of reaching a decision that is in the best interest of the children. *Id*.; *Harvey v. Harvey*, 13-81 (La.App. 3 Cir. 6/5/13), 133 So.3d 1, *writ denied*, 13-1600 (La. 7/22/13), 119 So.3d 596. On appellate review, the trial court's custody determination is entitled to great weight and will not be disturbed absent a clear showing of an abuse of discretion. *Johnson v. Clofer*, 18-119 (La.App. 5 Cir. 6/27/18), 251 So.3d 597; *Bridges v. Bridges*, 9-742 (La.App. 5 Cir. 2/9/10), 33 So.3d 914.

There is absolutely nothing in the record before this court that indicates that the trial court used a lesser burden of proof in making its determination. Simply

5

because the trial court did not use "clear and convincing evidence" as magic words in its reasons does not indicate that the standard was not applied. To the contrary, the trial court issued explicit, detailed, thorough, and lengthy reasons for judgment, which indicate that the trial court clearly found it highly probable that sole custody was in the best interest of the child.

The trial court explicitly stated that Josh was not credible in its eyes. Most notably, Josh denied telling multiple counselors several disturbing things, though his testimony was directly contradicted by their notes and his medical records. Josh also claimed that he seldom fought with either Laura or Strawberry, a claim directly contradicted by them, texts, video evidence, and his own medical records. The trial court was concerned with Josh's defensive attitude and denial concerning his behavior and how that would affect his ability to improve his behavior. To the contrary, the trial court found Laura to be very credible and that her testimony was "eerily similar" to that of Strawberry. In matters of credibility, a reviewing court must give great deference to the trial court's findings, as the trial court is in the best position to evaluate the demeanor and mannerisms of the witnesses. *Dvilansky v. Correu*, 16-279 (La.App. 4 Cir. 10/26/16), 204 So.3d 686, *writ denied*, 16-2081 (La. 1/9/17), 214 So.3d 871. "When conflicting testimony exists, reasonable evaluations of credibility and reasonable inferences of fact made by the trial court are not to be disturbed." *Id*. at 690 (citing *Stobart v. State through Dept. of Transp. and Dev.*, 617 So.2d 880 (La.1993)).

The testimonies of Laura and Strawberry indicate that Josh was controlling and verbally abusive, at best. They both reported isolation from friends and family and both testified that he used his position as a police officer to prevent them from reporting his behavior to the police, claiming that they would not be believed.

Laura reported that Josh would punch holes in the wall, made unfounded accusations of infidelity out of jealousy, and would get in her face to yell. Laura testified that he once handcuffed her and threw her against a wall. She likewise testified that Ava told her Josh hit Strawberry. Video of this conversation was shown at trial. Laura stated that she was concerned about Ava witnessing domestic abuse by Josh against Strawberry and noted that Ava was starting to act out in a similarly aggressive manner at school and at home.

Strawberry testified that Josh would likewise make unfounded accusations of infidelity against her, would get in her face to yell, and that he destroyed a painting her child made for a charity auction out of anger. She stated that he would demean her and call her horrible names. The trial court found video shown at trial to support that claim. Text evidence showed verbally abusive language directed toward Strawberry and her oldest child. She claimed that Josh's yelling was so dramatic that her ten-year-old once threw up because he became so upset after seeing it. Strawberry stated that Josh would often yell in such a manner in front of her children. Mr. Windham testified that witnessing such behavior affected children's development and growth, especially children under five, such as Ava. During the incident on Father's Day, Josh slammed a door on Strawberry, injuring her foot, raising Josh's behavior from mental and verbal abuse against Strawberry to the realm of physical abuse as well.

Mr. Windham testified that he found Josh to be abusive and controlling. He and the trial court heard audio of a phone call from Josh to Laura supporting this notion, wherein Josh berates Laura for drug abuse after he mistook plastic items eaten by a dog for crystal meth. He stated that Josh was defensive and self-serving, that Josh would deny his behaviors and their affects, and would therefore continue

to behave in that manner until he underwent treatment. Mr. Windham testified that abusers do not stop abusing without intervention and recommended Josh enter a domestic violence program. Mr. Windham testified that the yelling, name-calling, and destroying things Josh did could affect Ava negatively, and that children often develop mental disorders after witnessing abusive interactions between their parents.

The trial court noted Josh scored high on four of the six domestic violence inventory tests, only passing the sections concerning drugs and alcohol. The trial court found Josh's unwillingness to follow the recommendation to get treatment concerning and indicative that these behaviors would not cease.[2] In all, the trial court's written reasons for judgment were eighteen pages, fourteen of which directly involved analysis of the La.Civ.Code art. 134 factors. The trial court clearly, carefully, and thoroughly considered those factors, noted its determination of the credibility of the parties in no uncertain terms, and plainly found that the best interest of the child involved sole custody belonging to Laura. After a review of the record, we can find no abuse of the trial court's discretion in that determination.

Finally, Josh claims the trial court erred in failing to allow reasonable visitation, limiting him to supervised visitation. Again, we disagree.

Louisiana Civil Code Article 136(A) states: "[s]ubject to R.S. 9:341 and 364, a parent not granted custody or joint custody of a child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would not be

---

[2] We note for thoroughness that, despite Josh's claim that his failure to follow the recommendations of Mr. Windham occurred prior to the latest consent judgment, "[e]vidence of incidents prior to entry of the stipulated judgment . . . remain relevant on the issue of best interest of the child." *Crowson v. Crowson*, 32,314, p. 4 (La.App. 2 Cir. 9/22/99), 742 So.2d 107, 110.

in the best interest of the child." The trial court is vested with vast discretion in matters of visitation and the trial court's determination will not be disturbed absent a clear showing of abuse. *Verret v. Verret*, 34,982 (La.App. 2 Cir. 5/9/01), 786 So.2d 944; *Hill v. Hill*, 34,104 (La.App. 2 Cir. 1/24/01), 777 So.2d 1263. That discretion extends to the determination of what constitutes reasonable visitation. *Bernard v. Bernard*, 20-973, 20-974 (La.App. 1 Cir. 2/19/21), ___So.3d___. Again, underlying the trial court's broad discretion is the trial court's superior opportunity to observe and evaluate the credibility of the witnesses. *Hill*, 777 So.2d 1263; *Windham v. Windham*, 616 So.2d 276 (La.App. 2 Cir.), *writ denied,* 620 So.2d 875 (La.1993).

For the reasons discussed above, the trial court clearly found that the best interest of the child lay in Josh having only supervised visitation, contingent upon his entering and completion of a domestic violence treatment program. While the amount of time Josh has with Ava is short, the record indicates that he purposely choses to cut that time in half, choosing one-hour sessions with Ava rather than the two hours he is allowed. Based on the record before us, we cannot find that the visitation granted to Josh is unreasonable, let alone an abuse of the trial court's great discretion. This assignment of error lacks merit.

For the above reasons, the decision of the trial court is hereby affirmed. Costs of this appeal are hereby assessed against Josh Smith.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.