799 So.2d 658 (2001)
Lauren HOLLINGSWORTH, Plaintiff-Appellant,
v.
James SEMERAD, Defendant-Appellee.
No. 35,264-CA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 2001.
Rhymes & Lucas, by George E. Lucas, Jr., Monroe, Counsel for Appellant.
Robert W. Sharp, Jr., Ruston, Counsel for Appellee.
*659 Before WILLIAMS, STEWART and GASKINS, JJ.
GASKINS, J.
In this appeal concerning child visitation, the mother complains of the trial court's refusal to invoke the provisions of the Post-Separation Family Violence Relief Act, La. R.S. 9:361, et seq., because it deemed that the father's abuse against the child was not severe enough and that the stepmother, the more seriously injured victim of the father's abuse, was not covered under the act. For the reasons set forth below, we amend the trial court judgment to remove the provision allowing a relative or friend of the father to supervise the father's visitation with the child. As amended, the trial court judgment is affirmed.

FACTS
During their marriage, the mother, Lauren Hollingsworth, and the father, James Semerad, had one child, Caroline Adelle Semerad (DOB 9/15/89). The parents were divorced in Michigan in 1991; the mother and child moved to Ruston, Louisiana. (The maternal grandparents lived in Ruston and the paternal grandparents in New Orleans.) The Michigan divorce degree awarded the parents joint custody with the mother having physical custody and the father receiving liberal and reasonable visitation rights.
In September 1996, the mother filed a petition in Louisiana to seek an increase in child support and to specify the father's visitation rights. Judgment on these rules was rendered in early 1997. In November 1997, the mother sought child support arrearages. The father responded by seeking designation as the domiciliary parent, claiming that the mother had impeded his contact with the child. In March 1998, the trial court ruled against the father on the arrearages issue.
In October 1998, the mother filed the present rule seeking to modify the father's visitation. She alleged that the child's anxiety over visiting the father was so great that she had to be treated by a psychologist and a licensed professional counselor. The allegations include physical abuse of the child by the father that included being jammed against a refrigerator, pinched on the thigh and buttocks, slapped and punched. It was further alleged that the father was obtaining a divorce from his current wife, Josie, and that the father had exposed the child to his new girl friend. The child's distress about visiting her father, the mother asserted, was so great that the child pulled her hair out. The report of her psychologist, Dr. Bobby Stephenson, which was attached to the rule, recommended that the child be protected from these experiences with her father. An affidavit from the counselor, Eileen Black, also expressed great concern pertaining to the child. In particular, the child was distressed by a "pancaking" game the father played in which he lay on top of the child and squirmed around. The court suspended the father's visitation with the child pending an independent evaluation of the child by Dr. Tony Young. The father again sought to be designated domiciliary parent.
In January 1999, the mother again requested child support arrearages. The court appointed Dr. Daniel W. Prior to perform a family evaluation. In March 1999, the father was held in contempt on the arrearages. Based upon Dr. Young's testimony that the allegations of the child were credible but required further validation, the court ordered supervised visitation in Lincoln Parish. While the visitation could not be overnight, the supervising *660 person could be a relative of the father.
In October 1999, the mother sought a continuance on the basis that the father had frustrated discovery; that evidence had been uncovered of the father's serious physical abuse of his ex-wife Josie; that suspicious evidence had been found pertaining to the father's alcohol consumption; that the paternal grandfather had sent several pages of "suggested testimony" to his son; and that the father and members of his family had made or attempted to make inappropriate contact with Dr. Prior. At a hearing on October 25, 1999, the court ordered that the father's supervised visitation be conducted in compliance with La. R.S. 9:362, i.e., in the presence of a person not a relative or friend of the abusing parent.
In December 1999, while ruling on the Christmas visitation, the trial court noted that it was presented with two scenarios: abuse of the child by the father, which was supported by the testimony of the child and her three treating health care professionals, and "parental alienation" of the child from the father as the result of the mother's manipulations, which was asserted by Dr. Prior. The trial court stated that if it erred, "it will err on the side of protection for the child." The court found that if not abusive, the father's conduct toward the child had been "highly inappropriate." After noting that all of the child's treating health care professionals recommended visits supervised by a non-relative, the court stated that it would not amend any orders presently in effect.
Evidence on the rule at issue was taken over an extended period of time: March 4 & 5, 1999; December 3, 28 & 30, 1999; March 31, 2000; and April 14, 2000. The trial court issued written reasons in July 2000, and judgment was signed in December 2000. In its written opinion, the court noted that the sole issue was whether and, if so, to what degreethe father's visitation with the child should be supervised and/or restricted. The court reviewed the conflicting expert testimony: all three health care professionals treating the child unanimously recommended that the father's visits be supervised by persons not related to the father and who were mental health care professionals. Dr. Prior examined the interaction between the parents and the child with an ultimate goal of restoring the father's visitation. Although Dr. Prior conceded that some of the father's behavior showed poor parenting and serious mistakes, he did not believe that it rose to the level of abuse. Dr. Prior also concluded that the father was the victim of parental alienation syndrome perpetrated against him by the mother and her family.
Dr. Young, the other court-appointed expert, found the child's allegations to be believable and found them to be consistent with her psychological tests. After evaluating the father, Dr. Young found him to have paranoid personality traits and a possible paranoid disorder; however, he did not appear to be a person who would sexually abuse the child. Dr. Young also tested the mother, whose results indicated that she was somewhat isolated and lonely. He testified that he did not believe that there was a significant risk of physical injury to the child if the father's visits were unsupervised.
After noting the hopelessly irreconcilable nature of the lay testimony, the court made certain factual determinations. Among them were the following: (1) concerns about the father's abuse of the child first arose in 1996; (2) the father did not sexually abuse the child and the "pancaking" incidents were not sexual; (3) the father struck the child on "multiple occasions" between February 1997 and November *661 1998, with bruises being seen on at least three occasions, two of which were photographed; (4) on May 9, 1998, the father deliberately struck the stepmother hard enough to break her sternum and on another occasion he tried to grab her by the throat; (5) in June 1998, the stepmother obtained a protective order against the father; (6) the father suffered from alcohol dependency, a more severe condition than alcohol abuse, and although he has sought treatment, he has failed to continue with AA participation; (7) the father lied under oath that he broke the stepmother's sternum accidentally and that he did not commit other violent acts against her; (8) the father and the stepmother both lied to Dr. Prior about the extent of the violence against her and the father lied to Dr. Prior when he denied alcohol problems less than 90 days after being released from intensive therapy for that affliction. The court further found that the evidence did not support a finding that the father was a victim of parental alienation.
The court concluded that the Post Separation Family Violence Relief Act was not applicable because the stepmother was not a parent of the child as required by La. R.S. 9:362(3). Since the child's injuries only resulted in bruises three times and no medical care was needed, the court found thatunder the totality of the facts of this familyimposition of the harsh consequences of the Post Separation Family Violence Relief Act was not justified. However, the court was satisfied that the facts warranted imposition of supervised and restricted visitation. The following conditions were placed upon the father's visitation: it must take place in Lincoln or Ouachita Parish under the supervision of a person agreed upon by the parties; no overnight visitation; and the supervising person could be a relative or friend of the father and did not have to be a mental health professional. If the parties could not agree, the court would designate the person. Supervision would continue until such time as the father underwent anger management counseling, successfully completed a court-approved substance abuse program, and proved that visitation would not harm the child. The court retained the option to impose whatever conditions were necessary to minimize risks of harm to the child. The court stated that it envisioned a gradual increase in visitation with the father eventually having full, unsupervised visitation. Both parents were ordered to take a program educating parents about children caught in the middle of custody battles. With the exception of the expert witness fees of the court-appointed experts, which were to be borne equally, the father was ordered to pay all court costs and expert witness fees.
The mother appeals.

POST SEPARATION FAMILY VIOLENCE RELIEF ACT

Law
In establishing the Post-Separation Family Violence Relief Act, the legislature set forth the following statement of purpose in La. R.S. 9:361:
The legislature hereby reiterates its previous findings and statements of purpose set forth in R.S. 46:2121 and 2131 relative to family violence and domestic violence. The legislature further finds that the problems of family violence do not necessarily cease when the victimized family is legally separated or divorced. In fact, the violence often escalates, and child custody and visitation become the new forum for the continuation of the abuse. Because current laws relative to child custody and visitation are based on an assumption that even divorcing parents are in relatively equal positions of power, and that such parents act in the *662 children's best interest, these laws often work against the protection of the children and the abused spouse in families with a history of family violence. Consequently, laws designed to act in the children's best interest may actually effect a contrary result due to the unique dynamics of family violence.
In relevant part, La. R.S. 9:362 defines the following terms:
(3) "Family violence" includes but is not limited to physical or sexual abuse and any offense against the person as defined in the Criminal Code of Louisiana, except negligent injuring and defamation, committed by one parent against the other parent or against any of the children. Family violence does not include reasonable acts of selfdefense utilized by one parent to protect himself or herself or a child in the family from the family violence of the other parent.
. . . .
(6) "Supervised visitation" means face-to-face contact between a parent and a child which occurs in the immediate presence of a supervising person approved by the court under conditions which prevent any physical abuse, threats, intimidation, abduction, or humiliation of either the abused parent or the child. The supervising person shall not be any relative, friend, therapist, or associate of the parent perpetrating family violence. With the consent of the abused parent, the supervising person may be a family member or friend of the abused parent. At the request of the abused parent, the court may order that the supervising person shall be a police officer or other competent professional. The parent who perpetrated family violence shall pay any and all costs incurred in the supervision of visitation. In no case shall supervised visitation be overnight or in the home of the violent parent.
[Emphasis added.]
In pertinent part, La. R.S. 9:364 provides these rules for child custody and visitation:
A. There is created a presumption that no parent who has a history of perpetrating family violence shall be awarded sole or joint custody of children. The court may find a history of perpetrating family violence if the court finds that one incident of family violence has resulted in serious bodily injury or the court finds more than one incident of family violence. The presumption shall be overcome only by a preponderance of the evidence that the perpetrating parent has successfully completed a treatment program as defined in R.S. 9:362, is not abusing alcohol and the illegal use of drugs scheduled in R.S. 40:964, and that the best interest of the child or children requires that parent's participation as a custodial parent because of the other parent's absence, mental illness, or substance abuse, or such other circumstances which affect the best interest of the child or children. The fact that the abused parent suffers from the effects of the abuse shall not be grounds for denying that parent custody.
. . . .
C. If the court finds that a parent has a history of perpetrating family violence, the court shall allow only supervised child visitation with that parent, conditioned upon that parent's participation in and completion of a treatment program. Unsupervised visitation shall be allowed only if it is shown by a preponderance of the evidence that the violent parent has completed a treatment program, is not abusing alcohol and psychoactive drugs, and *663 poses no danger to the child, and that such visitation is in the child's best interest. [Emphasis added.]

Application of the Act to Abuse of the Stepmother
The mother argues that the trial court erred in not invoking the Post Separation Family Violence Relief Act on the basis of the father's abuse of the stepmother. According to the mother, construing the Act as not protecting a child and stepparent in the same household from abuse leads to the absurd result of condoning the abuse against the stepparent. She contends that the father's action in breaking the stepmother's sternum is a sufficiently severe act of abuse to trigger the Act.
As previously noted, the Act defines family violence as including physical abuse "committed by one parent against the other parent or against any of the children." Unfortunately, this definition does not encompass the situation presented in the instant case wherein a stepparent, not "the other parent," was the victim of abuse.
By analogy, we observe that the Protection from Family Violence Act defines "family violence" as abuse occurring "between family or household members, who reside together or who formerly resided together." La. R.S. 46:2121.1(2). The term "family or household members" is defined as including spouses, parents, children, stepparents, stepchildren, foster parents, foster children, as well as grandparents or their grandchildren. La. R.S. 46:2121.1(1). Also, the legislature recently expanded coverage of the Protection from Family Violence Act to include victims of a "dating partner." See La. R.S. 46:2151, added by Acts 2001, No. 1180. Thus, it is clear that, had the legislature intended to expand the definition of "family violence" in the Post-Separation Family Violence Relief Act to include a stepparent, it could have done so in a similar fashion.
The omission of a stepparent from coverage under the Post Separation Family Violence Relief Act is a matter which addresses itself to the legislature.

Application of the Act to Abuse of the Child
The mother contends that, even if the acts of abuse against the stepmother are not considered, the Act should have been applied because the child was slapped, punched or hit on at least eight occasions in a two-year period.
Our review of the record indicates that the first physical evidence of any abuse appeared in March 1997. While assisting the child with her bath shortly after her return from visitation, the mother observed a large bruise on the child's shoulder area. Upon questioning, the child finally admitted that her father had punched her in the shoulder with his fist. (A photo documenting this bruise was admitted into evidence.) In August 1997, the child returned from visitation with a bruise on the right side of her chest, two bruises on her right buttock, and a bruise on her right upper arm that looked like a pinch mark. She said her father hit and pinched her. After visitation in October 1997, Caroline reported that her father slapped her in the face twice; one slap caused her to hit her head on the car window. On this occasion, the father admitted to the maternal grandfather that he had slapped the child, claiming that she would not mind him.
After the child returned from her Thanksgiving 1997 visitation with her father, she recounted to her mother that he had repeatedly jammed her into the refrigerator. According to the child, he was angry, not "playing." In April 1998, the child again had bruisesthis time on her right lateral thigh and her right buttock. *664 (A photo showing these bruises was also admitted.) The child again reported her father striking her with his fist after visitation in July 1998.
The trial court found that, based upon the totality of the circumstances of this family, imposition of the harsh consequences of the Post Separation Family Violence Relief Act was not warranted. In so ruling, the court noted that the first acts of violence occurred approximately five years after the divorce, that the child did not require medical treatment of her injuries, and that only three incidents resulted in bruises.
We find that the trial court retains some latitude in evaluating incidents of abuse in deciding visitation matters. La. R.S. 9:364(A) provides in relevant part: "The court may find a history of perpetrating family violence if ... the court finds more than one incident of family violence." [Emphasis added.] In assessing the incidents of alleged harm to the child in the instant case, the trial court obviously found that they were not so numerous or so severe as to warrant the full consequences of the Act. However, the courtwith an appropriate measure of caution and concern for this intelligent and sensitive young girl's emotional and physical well-beingchose to carefully craft a visitation plan that would afford the child sufficient protection while eventually permitting a suitably compliant father to be restored to his full parental rights. After a careful review of the record, we find no error in the trial court's actions.
See and compare Lewis v. Lewis, 34,031 (La.App.2d Cir.11/3/00), 771 So.2d 856, wherein this court found legal error in failing to apply the Act where the wife/mother established that she sustained at least one serious injury requiring hospitalization.

Persons eligible to supervise visitation
In particular, the mother complains of the portion of the trial court judgment that allows the child's visitation with the father to be supervised by a relative or friend of the father. She argues that having visitation supervised by a person who does not believe that the abuse occurred affords the child insufficient protection.
La. R.S. 9:341 addresses visitation restrictions in child custody matters. In relevant part, it states:
A. Whenever the court finds by a preponderance of the evidence that a parent has subjected his or her child to physical abuse ... the court shall prohibit visitation between the abusive parent and the abused child until such parent proves that visitation would not cause physical, emotional, or psychological damage to the child. Should visitation be allowed, the court shall order such restrictions, conditions, and safeguards necessary to minimize any risk of harm to the child. All costs incurred in compliance with the provisions of this Section shall be borne by the abusive parent. [Emphasis added.]
A review of the trial court's written reasons for judgment reveals that the trial court found by a preponderance of the evidence that the father struck the child "on multiple occasions" with bruises being observed on at least three occasions.[1]
The three mental health care professionals who treated the childher psychiatrist, Dr. Lyndon Green; her psychologist, Dr. Bobby Stephenson; and her licensed professional counselor, Eileen Blackwere *665 unanimous in concluding that the child was credible. Likewise, Dr. Tony Young, a clinical psychologist appointed by the court, also found her to be credible. None of these professionals found evidence of the child being coached as to what to say.[2] The child was consistent in her accounts of being slapped, hit, punched, and pinched by her father. She recounted her fear of her father and her reluctance to be near him. Ms. Black, the mental health care professional who saw her the most frequently, noted improvements in the child's condition after the institution of supervised visitation. She testified that the child appeared to feel safer as a result of this action. The testimony of the maternal relatives corroborated this observation.
Our foremost consideration is the safety and well-being of the child. The father's deliberate striking of the stepmother and the repeated bruising of the child, combined with his alcohol dependency, raises serious concerns for the child's well-being. Also, given the testimony by all of the child's treating mental health care professionals indicating that supervision of the father's visitation by a unbiased person would in the child's best interest, we amend the trial court judgment to remove the provision that allows a family member or friend of the father to supervise the visitation. In particular, to allow supervision by members of the father's family who refuse to believe that the father is capable of abusing the childcarries the potential of placing this child at risk.

CONCLUSION
Accordingly, the trial court judgment is amended to remove the provision allowing a relative or friend of the father to supervise the father's visitation with the child. In the event that the parties are unable to agree on a suitable person to supervise the visitation, the court shall designate a suitable person. In all other respects, the judgment is affirmed. Costs of this appeal are assessed equally between the parents.
AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] Even if La. R.S. 9:341 were not applicable, the trial court may impose supervised visitation when warranted for the child's safety or if in the child's best interest. Harper v. Harper, 33,452 (La.App.2d Cir.6/21/00), 764 So.2d 1186.
[2] Dr. Daniel Prior, who was also appointed by the court to do a family evaluation, made no apparent effort to ascertain the validity of the child's complaints of abuse by the father.