764 So.2d 1186 (2000)
Joey L. HARPER, Plaintiff-appellant,
v.
Michelle C. HARPER, Defendant-appellee.
No. 33,452-CA.
Court of Appeal of Louisiana, Second Circuit.
June 21, 2000.
*1187 Chris L. Bowman, Jonesboro, Counsel for Appellant.
Dee A. Hawthorne, Natchitoches, Counsel for Appellee.
Before CARAWAY, KOSTELKA and CRIGLER (Pro Tempore), JJ.
CARAWAY, J.
In this child custody and support matter, the trial court granted sole custody of the minor child to the mother, with only supervised visitation granted to the father. The trial court also ordered the father of the minor child to pay $795 per month in child support. From these rulings, the father appealed. Finding no merit to the father's assignments of error, we affirm.

Facts
Joey and Michelle Harper were married on December 6, 1996. The parties separated, however, only a couple of months after the marriage. When Joey and Michelle separated, Michelle was pregnant. Their son, Christopher, was born on November 3, 1997.
This matter was first brought to the trial court on a petition for divorce by Joey, wherein Joey disavowed paternity of the then unborn child. Later blood tests proved that Joey was, in fact, Christopher's biological father, and Joey then amended his petition for divorce acknowledging Christopher as his child. In his amended petition for divorce, Joey also requested custody of Christopher, as well as child support.
The custody and support disputes were heard by the trial court in February and April, 1999. The evidence showed that Joey had established no relationship with Christopher since the child's birth and that he had exhibited abusive actions toward his prior wife and children. By judgment signed on April 21, 1999, the trial court awarded sole custody of Christopher to Michelle, with only the right of supervised visitation to Joey. Also, the trial court ordered Joey to pay child support in the amount of $795 per month. Joey brings this appeal and assigns three assignments of error.

Child Support
Joey first complains that the trial court did not follow the child support guidelines when it ordered him to pay $795 per month for child support. He claims that the evidence adduced at trial shows that the child support guidelines were not followed, and that the trial court failed to give oral or written reasons why it deviated from the guidelines. Joey's main complaint stems from a comment by the trial court when giving the oral reasons for judgment. The court stated: "And there is nothe work sheet you see nothing wrong with it, Mr. White? I mean it's unfortunate that there's no deductions of any kind herein ..." Joey interprets this statement to mean that the trial court relied on "flawed income data" when determining the child support award. We disagree with Joey's interpretation of the trial *1188 court's statements, and hold that the trial court did not err.
Fathers and mothers, by the very act of marrying, contract together the obligation of supporting, maintaining, and educating their children. La. C.C. art. 227. Both parents are obligated to contribute to the support of children. Schelldorf v. Schelldorf, 568 So.2d 168 (La.App. 2d Cir.1990); Osborne v. Osborne, 512 So.2d 645 (La.App. 2d Cir.1987). In a proceeding for divorce or thereafter, the court may order either or both of the parents to provide an interim allowance or final support for a child based on the needs of the child and the ability of the parents to provide support. La. C.C. art. 141. When reviewing an award of child support, an appellate court will not overturn the trial court's factual determinations unless, in light of the record taken as a whole, they are manifestly erroneous or clearly wrong. Havener v. Havener, 29,785 (La. App.2d Cir.8/20/97), 700 So.2d 533.
The child support guidelines are set forth in La. R.S. 9:315, et seq., and are to be used in any proceeding to establish or modify child support. According to La. R.S. 9:315.2(A), each party shall provide the court with a verified income statement showing gross income and adjusted gross income, together with documentation of current and past earnings. From this evidence, the parties shall combine the amount of their adjusted gross incomes, and each party shall then determine by percentage his or her proportionate share of the combined amount. La. R.S. 9:315.2(C). The court shall then determine the basic child support obligation amount from the statutory schedule using the combined adjusted gross income of the parties. La. R.S. 9:315.2(D).
Here, Michelle's counsel admitted into evidence the child support worksheet, along with a copy of Joey's 1998 W-2 form. Joey's W-2 shows that he earned $71,986.67 in 1998, or $5,998.00 per month. The worksheet did not show any earned income on Michelle's part. However, since Michelle is caring for a child of the marriage that is under the age of five, Michelle is not required to work outside the home. La. R.S. 9:315.9. Joey did not submit to the court his own verified income statement, nor did he object to the one Michelle submitted. Joey did not challenge the income figures used on the income worksheet, and testified that his income was the same as the amount listed on his 1998 W-2.
The information used on the child support worksheet was taken directly from Joey's 1998 W-2, and the information was properly applied to the child support guidelines. The trial court did not deviate from the guidelines.
Regarding Joey's claim that the trial court acknowledged an inaccuracy in the worksheet, we hold that his interpretation of the transcript is flawed. In its oral reasons, the trial court was not acknowledging any error; it simply asked Joey's attorney whether there was anything wrong with the worksheet. Counsel verified that nothing was wrong. The income information was never questioned nor challenged during the trial. The court simply commented on the fact that it was unfortunate for Joey that there were no deductions, and that he'd have to bear all of the basic child support obligation.
Furthermore, it was not improper for the court to order Joey to carry health and hospitalization insurance in addition to his monthly support obligation. La. R.S. 9:3154.[1] Joey's assignment of error is *1189 without merit; therefore, the judgment ordering Joey to pay $795 per month in child support is affirmed.

Sole Custody Award
Joey next argues that the trial court committed error in awarding sole custody of Christopher to Michelle. More specifically, Joey points us to the following colloquy from the April 8, 1999 trial transcript:
BY THE COURT: ... I suppose sole custody is what you would want, Mrs. Hawthorn, and of course you would want joint custody or does in matter, Mr. White?
BY MR. WHITE: Well, joint custody is a term of art, Your Honor, as you well know but I would think that we would certainly prefer joint custody.
BY THE COURT: I guess the only difference I really know is the fact that you could have some say in the education of the child and so forth, tutorship would be the number one at this point. But I would say at this point since you don't even know the child, that it's sole custody would be the preferred way and I hate to do that because one year from now, if everything is going fine, joint custody would be the desirable trait but I think sole custody would be what we need at this point. Visitation being the number one problem ...
Essentially, Joey argues that Michelle failed to overcome the presumption of joint custody.
La. C.C. arts. 131, 132 and 134, as amended by Act No. 261 of 1993, have as their focus the best interest of the child in any contest over joint or sole custody. Article 132 states that in the absence of an agreement regarding custody, "the court shall award custody to the parents jointly; however, if custody in one parent is shown by clear and convincing evidence to serve the best interest of the child, the court shall award custody to that parent." Article 134 provides twelve relevant factors for the court to consider in determining the best interests of the child.[2]
The author of a 1994 Louisiana Law Review article discussed the change in the focus brought about by the 1993 amendments, as follows:
Under present Article 132, the focus of the inquiry is not on the joint custody arrangement; it is on sole custody in a particular parent. It must be shown, by clear and convincing evidence, that custody in that parent will serve the best interest of the child. The question changes from why joint custody is not in the best interest of the child to why sole custody in a particular parent is in the best interest of the child. Although *1190 these issues may overlap, the burden on the parent seeking sole custody is to demonstrate that the granting of custody to that parent alone will be in the best interest of the child.
Kenneth Rigby, 1993 Custody and Child Support Legislation, 55 La. L.Rev. 103, 105 (1994). The author further noted that the test shifted from "a negative to a positive one, from why joint custody to both parents is not in the child's best interest to why sole custody in a particular parent is in he child's best interest." Id. (Emphasis in original).
The "clear and convincing" evidentiary standard is a heavier burden of proof than the usual civil case "preponderance of the evidence" standard, but is less burdensome than the "beyond a reasonable doubt" standard of a criminal prosecution. To prove a matter by clear and convincing evidence means to demonstrate the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence." Renter v. Willis-Knighton Medical Center, 28,589 (La. App.2d Cir.8/23/96), 679 So.2d 603.
The primary consideration in making a child custody determination is always the best interest of the child. Evans v. Lites, 30,362 (La.App.2d Cir.6/24/98), 714 So.2d 914; Powell v. Powell, 28,911 (La.App.2d Cir.12/11/96), 684 So.2d 1084. When determining the best interest of the child in custody cases, there must be a weighing and balancing of factors under La. C.C. art. 134 favoring or opposing custody in respective competing parents on the basis of the evidence presented in each particular case. Evans, supra; Powell, supra.
A trial court's determination of child custody is entitled to great weight and will not be disturbed on appeal absent a clear abuse of discretion. Evans, supra; Powell, supra. An appellate court should be reluctant to interfere with custody plans ordered by the trial court in the exercise of its discretion. Evans, supra; Powell, supra.
In this case, Michelle proved by clear and convincing evidence that the grant of sole custody to her is in the best interest of the child. In making its decision, the trial court took into account testimony establishing Joey's history of abusive behavior toward his other children, as well as his inability to control his temper. Also, the trial court took into account the fact that Joey did not know Christopher at all. Since Christopher's birth, seventeen months before the time of trial, Joey had not attempted to be involved in the life of the child. La. C.C. art. 134(1), (4), (5) and (12). The testimony at trial disclosed that Joey made no effort to see or support his child even after the blood tests determined that the child was, in fact, his biological son. The trial court concluded: "I don't know ... if you'll ever have the relationship with this child."
Based on these findings, we find that the trial court acted in its discretion and could determine that it was highly probable that the continued sole custody by Michelle is in the child's best interest.

Supervised Visitation
Joey's last assignment of error alleges that the trial court erred by ordering his visitation with Christopher to be supervised. The trial court ordered the visitation to be in the home of the paternal grandmother in Heflin, Louisiana. Joey complains that the trial court did not find that Joey was abusive to Christopher, nor could the court have made such a finding, because Joey never had custody of Christopher.
Joey relies on the language of La. R.S. 9:341(A) to argue that the trial court erred when it restricted his visitation with Christopher. La. R.S. 9:341(A) places restrictions on visitation, "whenever the court finds by a preponderance of the evidence that a parent has subjected his or her child to physical abuse, or sexual abuse or exploitation, or has permitted such abuse or *1191 exploitation of the child ..." Additionally, La. R.S. 9:362(6) defines supervised visitation as meaning, "face-to-face contact between a parent and a child which occurs in the immediate presence of a supervising person approved by the court under conditions which prevent any physical abuse, threats, intimidation, abduction, or humiliation of either the abused parent or the child." Joey's emphasis on these statutes is misplaced.
As with custody disputes, the paramount consideration in setting visitation privileges for the non-custodial parent is the best interest of the child. Duvalle v. Duvalle, 27,271 (La.App.2d Cir.8/23/95), 660 So.2d 152. In visitation matters, the weight given to each factor under La. C.C. art. 134 is left to the discretion of the trial court. Bradford v. Bradford, 30,128 (La. App.2d Cir.12/23/97), 704 So.2d 440.
La. R.S. 9:341 does not apply to the facts of this case. Section 341 simply provides that if it is proven by a preponderance of the evidence that a parent has abused his/her child, or has permitted such abuse or exploitation, then the court shall prohibit visitation between the abusive parent and the abused child until the abusive parent proves that visitation would not harm the child. The statute does not limit the trial court from ordering supervised visitation in other situations if it decides that it is warranted for the safety of the child, or if supervised visitation is in the child's best interest.
From our review of the record, there is ample evidence to support the trial court's decision. Evidence was presented that Joey once hit his second wife, bruising her eye, and whipped his children and stepchildren with a belt, leaving bruises. In fact, Joey's second wife testified that while in the process of potty training her toddler, Joey whipped and bruised her two-year-old son when the boy wet his clothes and bed.
Furthermore, Joey currently works out of Houma, Louisiana, some 300 miles away from Michelle's residence in Shreveport. Joey's new wife works in Houma. Joey testified that his work currently keeps him in Houma a majority of the year, and that he can only come to north Louisiana on the weekends.
Although the trial court did not find that Joey abused Christopher, it stated:
"I'm thinking, Mr. Harper, that you're the good old guy that we'd all probably like, you know, without any problem whatsoever. But I don't know that you have any parenting skills whatsoever. I think you let somebody else do the parenting and you come home every now and then and your temper sometimes gets the best of you and I think you havepunishment has been too severe I think, no doubt about it at this time."
Considering the fact that Joey and Christopher had only met on one occasion at the time of trial, and the fact that Christopher was less than two years of age, it was not manifestly erroneous for the trial court to find that supervised visitation was in the best interest of the child.

Conclusion
For the foregoing reasons, the trial court is affirmed. Costs of this appeal are assigned to appellant, Joey Harper.
AFFIRMED.
NOTES
[1] La. R.S. 9:315.4 states:

In any child support case, the court may order one of the parties to enroll or maintain an insurable child in a health benefits plan, policy, or program. In determining which party should be required to enroll the child or to maintain such insurance on behalf of the child, the court shall consider each party's individual, group, or employee's health insurance program, employment history, and personal income and other resources. The cost of health insurance premiums incurred on behalf of the child shall be added to the basic child support obligation.
[2] La. C.C. art. 134. Factors in determining child's best interest

The court shall consider all relevant factors in determining the best interest of the child. Such factors may include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.