# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

**09-1274 consolidated with 09-1275**

**D. R. S.**

**VERSUS**

**L. E. K.**

**consolidated with**

**L. K.**

**VERSUS**

**D. S.**

\*\*\*\*\*\*\*\*\*\*\*\*

**APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NOS. 227,135 AND 227,157 DIV. "C"
HONORABLE F. RAE SWENT, DISTRICT JUDGE**

\*\*\*\*\*\*\*\*\*\*\*\*

**JAMES T. GENOVESE
JUDGE**

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of James T. Genovese, Shannon J. Gremillion, and David E. Chatelain,\* Judges.

**REVERSED AND REMANDED.**

---

*Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**David C. Hesser**
**2820 Jackson Street**
**Alexandria, Louisiana 71301**
**(318) 542-4102**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
**D.R.S.**

**Susan Ford Fiser**
**Post Office Box 12424**
**1634 Metro Drive**
**Alexandria, Louisiana 71315-2424**
**(318) 442-8899**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**L.E.K.**

**GENOVESE, Judge.**

In this child custody case, the father, D.R.S.,[1] appeals the trial court's judgment awarding the mother, L.E.K., sole custody of the minor child, A.G.K., subject to visitation afforded D.R.S. as set forth in the visitation schedule therein, and decreeing that L.E.K. has the sole authority to decide the religious preference of the child. For the following reasons, we reverse and remand.

## FACTS

A.G.K. is the three-year-old child of D.R.S. and L.E.K., who were never married. Two weeks after the birth of the child, D.R.S. filed a Petition to Determine Paternity, Set Shared Custody and Set Child Support. Pursuant to an agreement between the parties, an Interim Judgment on Rule was signed by the trial court in January 2008, ordering joint custody of the child and designating L.E.K. as the domiciliary parent. No specific visitation schedule was included in the interim judgment; instead, it provided that visitation was to "be as the parties can agree and in accordance with the guidance and recommendations of a professional counselor, Dr. R. James Logan."

Shortly thereafter, in March 2008, D.R.S. filed a Motion and Order for Rule for Contempt; for Sole Custody and Bond to Insure Compliance with Custody Order alleging as follows:

> [B]ecause of [L.E.K.'s] consistent refusal to allow custody and visitation by [him] and the emotional damage it may do to the Minor Child . . . it is in the best interest of the Minor Child that he be awarded sole care, custody and control of the Minor, subject to reasonable visitation [as set forth] by this Court.

L.E.K. responded with a rule seeking sole custody, subject to visitation by D.R.S.[2]

---

[1]Pursuant to Uniform Rules—Courts of Appeal, Rules 5–1 and 5–2, the initials of the parties will be used to protect and maintain the privacy of the minor child involved in these proceedings.

[2]L.E.K. also instituted separate proceedings with the filing of a Petition for Protection from Abuse, and the two proceedings were consolidated by the trial court.

An Interim Order was entered by the trial court setting forth the visitation rights of D.R.S. with the child and appointing Dr. Daniel J. Lonowski as the trial court's expert to evaluate the parties and make a recommendation as to a custodial arrangement that would be in the best interest of the child.

Thereafter, the parties filed various pleadings containing a plethora of contentious allegations which are indicative of the level of conflict between them. Prior to trial, Gregory N. Wampler was appointed by the trial court as the attorney for the minor child. Additionally, following a pre-trial conference, D.R.S. filed a Motion to Recuse the presiding judge, who had been appointed as a result of prior recusals.

The pertinent issues of custody and visitation were heard by the trial court on December 9, 2008. In its Reasons for Judgment, the trial court awarded sole custody to L.E.K. and set forth a restrictive visitation schedule on behalf of D.R.S. for the year 2009. Also, in its Reasons for Judgment, the trial court stated that "if all goes well," different visitation rights for the years 2010-2012 were to be adhered to by the parties "in all years until the child becomes subject to the school calender[,]" at which time "[t]hey must agree to a standard 9/3 month visitation or return to court." Additionally, the trial court declared that L.E.K. had "the sole authority to decide the child's religious preferences." Further, the trial court devised the visitation schedule such that D.R.S. would not have the minor child on Sunday or Wednesday nights so as "to eliminate any question of whether the child gets taken to any church service."

A judgment consistent with the trial court's written reasons was signed January 28, 2009. Thereafter, D.R.S. filed a motion for new trial which the trial court denied on June 24, 2009, and that judgment was signed on August 18, 2009. D.R.S. appeals both the January 28, 2009 and August 18, 2009 judgments.

2

## ASSIGNMENTS OF ERROR

On appeal, D.R.S. sets forth the following assignments of error:

1. The [t]rial [court] erred in denying a hearing on the motion to recuse.

2. The [t]rial [c]ourt was erred [sic] and clearly wrong when it awarded sole custody to [L.E.K.] without clear and convincing evidence.

3. The [t]rial [c]ourt erroneously held that [L.E.K.] had the right to determine the minor child's religion and cultural upbringing.

4. The trial court erred in creating a visitation schedule designed to keep [D.R.S.] away from the child on religious days.

## LAW AND DISCUSSION

### Motion to Recuse

Following the pre-trial conference, D.R.S. filed a motion to recuse the presiding judge. On appeal, he contends that the trial court erred in failing to have a hearing on the motion prior to denying same. On this issue, we note that D.R.S. did not seek a review of that ruling prior to trial. Moreover, this court takes judicial notice that this judge has since retired and no longer presides in the Ninth Judicial District Court. However, since we reverse the decision of the trial court and the judge in question has retired, the motion to recuse has been rendered moot.

### Sole Custody

D.R.S. asserts on appeal that the award of sole custody to L.E.K. was erroneous. We agree.

> The standard of review in child custody matters has been clearly stated by this court:
>
>> The trial court is in a better position to evaluate the best interest of the child from its observances of the parties and witnesses; thus, a trial court's determination in a child

3

custody case is entitled to great weight on appeal and will not be disturbed unless there is a clear abuse of discretion.

*Hawthorne v. Hawthorne*, 96-89, p. 12 (La.App. 3 Cir. 5/22/96), 676 So.2d 619, 625, *writ denied*, 96-1650 (La.10/25/96), 681 So.2d 365.

*Gremillion v. Gremillion*, 07-492, p. 4 (La.App. 3 Cir. 10/3/07), 966 So.2d 1228, 1231-32.

Louisiana Civil Code Article 132 (emphasis added) provides as follows:

If the parents agree who is to have custody, the court shall award custody in accordance with their agreement unless the best interest of the child requires a different award.

In the absence of agreement, or if the agreement is not in the best interest of the child, the court shall award custody to the parents jointly; however, *if custody in one parent is shown by clear and convincing evidence to serve the best interest of the child, the court shall award custody to that parent.*

Louisiana Civil Article 132, Comment (b), expressly notes that "[t]his latter provision is intended to strengthen the preference for joint custody provided for in former Civil Code Article 131(A)." The effect of the 1993 revisions were discussed by the second circuit which stated as follows:

La. C.C. arts. 131, 132 and 134, as amended by Act No. 261 of 1993, have as their focus the best interest of the child in any contest over joint or sole custody. Article 132 states that in the absence of an agreement regarding custody, "the court shall award custody to the parents jointly; however, if custody in one parent is shown by clear and convincing evidence to serve the best interest of the child, the court shall award custody to that parent." Article 134 provides twelve relevant factors for the court to consider in determining the best interests of the child.

The author of a 1994 Louisiana Law Review article discussed the change in the focus brought about by the 1993 amendments, as follows:

Under present Article 132, the focus of the inquiry is not on the joint custody arrangement; it is on sole custody in a particular parent. It must be shown, by clear and convincing evidence, that custody in that parent will serve the best interest of the child. The question changes from

4

> why joint custody is not in the best interest of the child to why sole custody in a particular parent is in the best interest of the child. Although these issues may overlap, the burden on the parent seeking sole custody is to demonstrate that the granting of custody to that parent alone will be in the best interest of the child.

> Kenneth Rigby, *1993 Custody and Child Support Legislation*, 55 La. L.Rev. 103, 105 (1994). The author further noted that the test shifted from "a negative to a positive one, from why joint custody to both parents is not in the child's best interest to why sole custody in a particular parent is in the child's best interest." *Id.* (Emphasis in original).

*Harper v. Harper*, 33,452, pp. 4-5 (La.App. 2 Cir. 6/21/00), 764 So.2d 1186, 1189-90 (footnote omitted).

In considering an issue of custody, in addition to the presumption in favor of joint custody, the burden of proof of the parent seeking sole custody is also significant. The second circuit, in *Harper*, 764 So.2d at 1190, elaborated on this heightened evidentiary burden opining as follows:

> The "clear and convincing" evidentiary standard is a heavier burden of proof than the usual civil case "preponderance of the evidence" standard, but is less burdensome than the "beyond a reasonable doubt" standard of a criminal prosecution. ["]To prove a matter by clear and convincing evidence means to demonstrate the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence." *Renter v. Willis-Knighton Medical Center*, 28,589 (La.App.2d Cir.8/23/96), 679 So.2d 603.

The record of these proceedings is replete with caustic and acrimonious accusations by both parties. There have been allegations of infidelity, physical abuse, drug and alcohol abuse, "secreting" of the minor child, harassment, and employment sabotage, to name but a few. In the words of the trial court, "[b]oth parties have engaged in vindictive behavior that greatly affects their own credibility[,]" and which the trial court "ha[d] no hesitation to say . . . [was] the most contentious custody dispute she has ever had presented."

We have thoroughly reviewed the record of these proceedings, and we purposely refrain from regurgitating the recitations detailed therein. We find it readily apparent that there is culpability to be shared by both parties and that D.R.S. bears more culpability than L.E.K. However, in conducting our appellate review, we remain mindful that the issue before this court is whether the trial court abused its discretion in determining that L.E.K. met her burden of proving, by clear and convincing evidence, that the award of sole custody of A.G.K. to her mother *is in the best interest of the minor child*. We find that the evidence in the record falls short of proof by clear and convincing evidence that the award of sole custody to L.E.K. is in the best interest of the minor child as required by La.Civ.Code art. 132.

The trial court provided lengthy Reasons for Judgment, noting therein that "[p]art of the problem in this case has been the duration of the dispute." Additionally, "[t]here have been multiple experts appointed to assist the parties and the court." The trial court noted the appointment of Dr. Logan to serve as a parenting coordinator to assist the parties in preparing a custody plan, and it also noted the subsequent appointment of Dr. Lonowski. The trial court also made reference to the appointment of an attorney to represent the minor child and to make a recommendation on custody to the trial court.

The opinions of these individuals, which were provided to the trial court, support an award of joint custody. The trial court rejected these opinions as it was free to do; however, as evidenced by the fact that both parties argue same in support of their opposing positions, this evidence was not inconsequential. Most importantly, the trial court does not squarely address the crucial question of why an award of sole custody to L.E.K. is in the best interest of A.G.K. as mandated by La.Civ.Code art. 132. Thus, the trial court's ruling on sole custody is not supported by the evidence.

6

In the trial court's Reasons for Judgment, there is considerable discussion regarding the actions of the parents and the continuing animosity between them. After considering all of the evidence, the trial court concluded that "[t]he evidence of continued and unreasonable conflict is clear and convincing evidence that these parents are not able to jointly parent the child." Again focusing on the conflict between the parents, the trial court expressly noted its "wish[] to make clear to the parties that the award of sole custody is because of the ongoing conflict." The trial court, however, provides no explanation, nor does it reference any particular facts in support of the necessary conclusion that the best interest of A.G.K. would be served by an award of sole custody to L.E.K. Neither the experts nor the attorney appointed to represent A.G.K. presented any clear and convincing evidence that sole custody in favor of L.E.K. was in the best interest of the minor child. In fact, to the contrary, their testimony supported joint custody as opposed to sole custody.

After reviewing the entire record of these proceedings, we find that L.E.K. failed to meet her burden of proving by clear and convincing evidence that an award of sole custody is in the best interest of A.G.K. as required by La.Civ.Code art. 132. Therefore, the evidence presented was insufficient to overcome the statutory preference in favor of joint custody. Consequently, the trial court abused its discretion in awarding sole custody of the minor child to L.E.K. The parties are hereby granted joint custody, with L.E.K. being designated the domiciliary parent and D.R.S. granted specified visitation privileges, particularly, but not limited to, holiday and summertime visitation, to be determined pursuant to a hearing before the trial court on remand.

### *Religious Preference and Cultural Upbringing*

D.R.S. also asserts on appeal that the trial court erred in holding that L.E.K. had the right to determine the minor child's religious and cultural upbringing. We agree. Though we are reversing the trial court's award of sole custody to the mother in favor of a joint custody award in accordance with La.Civ.Code art. 132, we find it necessary to address this issue for the sake of clarity since we have designated the mother as the domiciliary parent.

The trial court's Reasons for Judgment state that "[a]s the party with sole custody, the mother will have the right to determine the child's spiritual and cultural upbringing." Additionally, "[a]s the result of the court's decision that there should be sole custody, the mother has the sole authority to decide the child's religious preference[,]" and "it is within her authority to decide what belief system is presented to the child in her home and any home in which the child visits or resides."

D.R.S. argues to this court that this is "particularly disturbing," considering the Louisiana Children's Code's express definition of "[r]esidual parental rights" as "those rights and responsibilities remaining with the parents after the legal transfer of custody of their child, including but not necessarily limited to right of visitation, consent to adoption, *right to determine religious affiliation*, responsibility of support, and the right of inheritance from the child." La.Ch.Code art. 116(24) (emphasis added). Additionally, the same definitional article of the Louisiana Children's Code defines "legal custody" as follows:

> the right to have physical custody of the child and to determine where and with whom the child shall reside; to exercise the rights and duty to protect, train, and discipline the child; the authority to consent to major medical, psychiatric, and surgical treatment; and to provide the child

8

with food, shelter, education, and ordinary medical care, *all subject to any residual rights possessed by the child's parents.*

La.Ch.Code art. 116(12) (emphasis added).[3]

In the case of *Becnel v. Becnel*, 98-593 (La.App. 5 Cir. 3/25/99), 732 So.2d 589, *writ denied*, 99-1165 (La. 6/4/99), 744 So.2d 630, following their divorce, the mother attempted to deny or restrict the father's visitation rights with his children based upon asserted religious beliefs of the children. In considering this issue, the fifth circuit stated as follows:

> The parent who drifts away from his children because of a divorce or separation may be able to improve his damaged relationship with his offspring later in life, but he and they will never be able to re-create their lost time together. For this reason, the fit, noncustodial parent who wants to remain an active force in his children's lives should be given the utmost encouragement by the courts. Curtailing his visitation, or dictating the character of it, in order to further the religious wishes of a custodial parent is not in harmony with this goal[.]
>
> * * *
>
> [C]ourts that treat the visitation and constitutional rights of parents cavalierly or casually serve neither the parties before them nor the cause of justice.
>
> Higginbotham, *"Mom, Do I Have to Go to Church?"*: *The Noncustodial Parent's Obligation to Carry Out the Custodial Parent's Religious Plans*, 31 Fam.L.Q. 585, 596 (1997).

*Id.* at 595.

Though the custodial or domiciliary parent may raise the child in a legitimate religion of his/her own choosing, that parent may not force that religion or religious affiliation upon the noncustodial parent or preclude the noncustodial parent from

---

[3]The particular provisions of the Louisiana Children's Code governing voluntary transfer of custody likewise defines and expressly subjects the rights of a legal custodian with "physical custody" to "any residual parental rights and responsibilities." La.Ch.Code art. 1511(1)(c) and (2).

pursuing his/her own religious affiliation and sharing same with the child provided doing so does not negatively affect the best interests of the child. There is no statutory nor jurisprudential authority to support the trial court's ruling that the custodial or domiciliary parent has the sole authority to mandate "what belief system is presented to the child in . . . any home in which the child visits or resides." We, therefore, reverse that portion of trial court's judgment which grants L.E.K. "the sole authority to decide the child's religious preference and to determine her spiritual and cultural upbringing."

***Wednesday and Sunday Visitation***

In his final assignment of error, D.R.S. asserts that the trial court erred in creating a visitation schedule designed to keep him away from the child on religious days. Specifically, he contends that the trial court erred in refusing to grant him visitation with the child on Sundays and Wednesdays.

However, we note that the June 5, 2009 court minutes reflect a modification of visitation by the parties pursuant to stipulation as set forth in the judgment signed August 18, 2009, making said modification effective July 17, 2009. Though that judgment indicates that the parties were present on June 5, 2008, and stipulated to the Consent Judgment on that date, the minutes of court accurately reflect that the modification was actually made on June 5, 2009. It is further noteworthy that this modification in the Consent Judgment was entered into *after* the judgment which is the subject of this appeal, but before the August 18, 2009 judgment denying D.R.S.'s Motion for New Trial, which is likewise before us on appeal. In that Consent Judgment, the parties stipulated, among other things, that D.R.S. "shall not object to the relocation of [L.E.K.] and the minor child to Baton Rouge, Louisiana."

10

Additionally, the judgment contains the stipulation of the parties to alter the visitation schedule of D.R.S. to include "visitation with the minor child from 6:00 p.m. Friday until 6:00 p.m. Sunday and every other weekend thereafter in that manner."

The Consent Judgment puts this court in the awkward and peculiar position of having to review a trial court judgment on appeal when the parties, via stipulation, have *subsequently* altered that judgment, coupled with the fact that, presumably, the child and the mother have since relocated to Baton Rouge. We, therefore, find that the Consent Judgment renders this assignment of error moot.

Having found that joint custody is in the best interest of the minor child, with the mother being designated as the domiciliary parent, and taking into consideration the subsequent Consent Judgment and what appears to be the relocation of the mother and child to Baton Rouge, Louisiana, we are compelled to remand this case to the trial court for a hearing on the issue of specified visitation privileges particularly, but not limited to, holiday and summertime visitation. In the interim, D.R.S.'s present visitation privileges, as modified herein, remain in force and effect unless and until modified by the trial court at a hearing relative to visitation privileges pursuant to this remand.

### **DECREE**

The judgment of the trial court awarding sole custody of A.G.K. to L.E.K. is reversed, and L.E.K. and D.R.S. are hereby awarded joint custody of the minor child, A.G.K., with L.E.K. being designated the domiciliary parent. The judgment of the trial court granting L.E.K. the sole authority to decide the child's religious preference and to determine her spiritual and cultural upbringing is also reversed. Additionally, this matter is hereby remanded to the trial court for a hearing to determine specified

11

visitation privileges particularly, but not limited to, holiday and summertime visitation in favor of D.R.S. D.R.S.'s present visitation privileges, as modified herein, remain in force and effect pending the hearing on visitation privileges pursuant to this remand. Costs of this appeal are assessed equally between D.R.S. and L.E.K.

**REVERSED AND REMANDED.**