STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-785

MIA ANGELINN CUTRERA DOOLEY

VERSUS

DONALD JUDE DOOLEY

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 89806
HONORABLE GERARD B. WATTIGNY, DISTRICT JUDGE

**********

MARC T. AMY
JUDGE

**********

Court composed of Oswald A. Decuir, Marc T. Amy, and J. David Painter, Judges.

**REVERSED IN PART; REMANDED IN PART; AFFIRMED IN PART.
MOTION TO STRIKE DENIED.**

Richard A. Spears
101 Taylor Street
New Iberia, LA  70560
(337) 367-1960
COUNSEL FOR PLAINTIFF/APPELLEE:
    Mia Angelinn Cutrera Dooley

Jeanne M. Bourque
1106 Coolidge Boulevard, Suite A
Lafayette, LA  70503
(337) 704-2094
COUNSEL FOR DEFENDANT/APPELLANT:
    Donald Jude Dooley

AMY, Judge.

The defendant appeals a judgment of the trial court granting the plaintiff sole custody and terminating his visitation with the parties' two minor children. For the following reasons, we reverse the trial court's judgment terminating the defendant's visitation and remand for the limited purposes of implementing a visitation schedule. We affirm the trial court's judgment granting the plaintiff sole custody of the two minor children.

### Factual and Procedural Background

The plaintiff, Mia Cutrera Dooley (Mia), and the defendant, Donald Dooley (Donald) were married; two children were born from their marriage. The couple divorced and have been involved in litigation for many years concerning child custody and support.[1]

Initially, in 1998, when the parties first divorced, Mia and Donald agreed to share joint custody of the children with Mia designated as the domiciliary parent. In 1999, Donald married Laura Dooley (Laura). In February of 2000, Mia filed a rule for custody, past due child support, and contempt against Donald, seeking sole custody of the children subject only to Donald's supervised visits. On February 25, 2000, the trial court signed judgment awarding the parties joint custody, with Mia designated as domiciliary parent, pursuant to a subsequent agreement between the two.

On May 6, 2002, Donald filed a "Motion for Change of Child Custody and Child Support." In that motion, Donald stated that he and his wife, Laura, had been involved in a serious automobile accident resulting in his inability to work and fulfill

---

[1] As child support is not at issue in the present matter, we will not discuss in detail the procedural history between the parties concerning child support.

his child support obligations. Donald sought a modification of the custody agreement to award him domiciliary custody of the children, an award of visitation to Mia, an order of child support against Mia, and a termination of the child support obligation he currently owed under the previous judgment. Donald further alleged that Mia's boyfriend was physically abusive towards the children, that Mia was secreting assets from him, and that Mia was purposefully not cooperating with the joint custody plan.

On May 20, 2002, Mia answered by filing a "Motion to Limit Visitation and to Modify Child Support Payment Schedule." Mia alleged that Donald's new spouse had begun constantly harassing her and the children, causing an interference detrimental to the best interest of the minor children. Specifically, Mia alleged that Laura was: interrogating the children about Mia's private life; insisting that she share in the decision making regarding the children; constantly contacting the children's daycare to subvert Mia's authority; tape recording calls between Mia, the children, and Donald; and having the child's hair cut in a manner she knew Mia would not approve.

A hearing on those motions was held July 17, 2002, and while the matter was under advisement, on July 24, 2002, Mia filed a rule for injunctive relief alleging that Laura had "attempted suicide further destabilizing the situation" and alleging that Laura "went unaccompanied" to a school day camp and pulled one of the children from his activities to talk with her.

The trial court issued judgment,[2] maintaining Mia's and Donald's joint custody, with Mia designated as the domiciliary parent and delineating a detailed sharing of physical custody schedule. The trial court included in that judgment several orders

---

[2] The trial court issued separate written reasons for judgment, however, both matters were included in the written judgment.

prohibiting Laura from contacting or visiting with the children. Laura was further prohibited from contacting Mia, going to the children's school or daycare, or recording telephone conversations between the children and/or Mia and Donald.

On January 13, 2003, and again on September 26, 2003, the parties entered into joint stipulations relaxing the restrictions against Laura, allowing Laura to fully participate in the visitations with the minor children. However, the parties agreed to maintain the prohibition that Laura not contact Mia, that she not be allowed at school activities without Donald present, and that she not discuss the litigation with the children.

On January 26, 2009, Mia filed a "Rule for Change of Custody and Contempt," which is the subject of the instant appeal. In that rule, Mia alleged that Laura, in violation of the earlier joint stipulations, had continued to contact Mia, attend the minor children's school activities without Donald, and that she had spoken with the children about the parties' custody arrangement "causing emotional distress to the minor children and affecting their relationship with" her. Further, Mia asked the trial court to grant her sole custody of the children, with Donald only being granted supervised visitation with the two children.

After a hearing, the trial court issued judgment, granting Mia sole custody and terminating all of Laura's and Donald's contact with the children.[3]

---

[3] In that judgment, the trial court also found Laura in contempt of court for "failure to comply with the Orders of the Court not to discuss the custody matter with the minor children" and "for talking about Mia Dooley to the minor children concerning the evil of Mia Dooley in not agreeing to the week and week visitation schedule and other violation of God's desires by Mia Dooley in not allowing Laura Dooley and Donald Dooley what they desire with reference to the minor children." The trial court ordered that Laura spend forty-five days in jail for this contempt, with thirty days of the sentence suspended on the condition that she have no further contact with the children from the date of judgment.

Immediately after the judgment was executed, Laura filed with this court a "Motion to Stay Execution of Sentence with Request for Expedited Consideration, Order, and Original Brief Seeking

Donald appeals, asserting that the trial court erred in: (1) awarding the plaintiff sole custody; (2) denying him visitation and effectively terminating his parental rights; and in (3) not accepting the expert testimony opining that the visitation should not be changed.

Mia also filed with this court a "Motion to Strike Improper Attachment" alleging that Donald, in brief to this court, attached the trial court's written reasons for judgment which "contains handwritten observations, pithy comments and other marginalia, which is improper and should not be contained[.]"

**Discussion**

*Standard of Review*

The trial court is in a better position to evaluate the best interest of the child from its observations of the parties and witnesses; thus, a trial court's determination in child custody cases is entitled to great weight on review and will not be disturbed unless there is a clear abuse of discretion. *D.R.S. v. L.E.K.*, 09-1274 (La.App. 3 Cir. 3/10/10), 33 So.3d 428, *writ denied*, 10-794 (La. 4/30/10), 34 So.3d 291. Each child custody case must be viewed in light of its own particular facts and circumstances, with the prevailing inquiry as to whether the custody arrangement is in the best interest of the child. *McCormic v. Rider*, 09-2584 (La. 2/12/10), 27 So.3d 277.

*Award of Sole Custody*

Louisiana Civil Code Article 132 states:

> If the parents agree who is to have custody, the court shall award custody in accordance with their agreement unless the best interest of

___

Emergency Appeal and/or Supervisory Writ to Stay Execution of Criminal Sentence to Begin Monday, August 10, 2009." A panel of this court granted Laura's writ, vacating her conviction for criminal contempt and reversing the forty-five day sentence. *Mia Angelinn Cutrera v. Donald Jude Dooley (In Re: Contempt of Laura Dooley)*, an unpublished writ bearing the docket number 09-948 (La.App. 3 Cir. 11/4/09).

the child requires a different award.

In the absence of agreement, or if the agreement is not in the best interest of the child, the court shall award custody to the parents jointly; however, if custody in one parent is shown by clear and convincing evidence to serve the best interest of the child, the court shall award custody to that parent.

In *D.R.S. v. L.E.K.*, 33 So.3d at 431-33, a panel of this court stated:

Louisiana Civil [Code] Article 132, Comment (b), expressly notes that "[t]his latter provision is intended to strengthen the preference for joint custody provided for in former Civil Code Article 131(A)." The effect of the 1993 revisions [sic] were discussed by the second circuit which stated as follows:

La. C.C. arts. 131, 132 and 134, as amended by Act No. 261 of 1993, have as their focus the best interest of the child in any contest over joint or sole custody. Article 132 states that in the absence of an agreement regarding custody, "the court shall award custody to the parents jointly; however, if custody in one parent is shown by clear and convincing evidence to serve the best interest of the child, the court shall award custody to that parent." Article 134 provides twelve relevant factors for the court to consider in determining the best interests of the child.

The author of a 1994 Louisiana Law Review article discussed the change in the focus brought about by the 1993 amendments, as follows:

Under present Article 132, the focus of the inquiry is not on the joint custody arrangement; it is on sole custody in a particular parent. It must be shown, by clear and convincing evidence, that custody in that parent will serve the best interest of the child. The question changes from why joint custody is not in the best interest of the child to why sole custody in a particular parent is in the best interest of the child. Although these issues may overlap, the burden on the parent seeking sole custody is to demonstrate that the granting of custody to that parent alone will be in the best interest of the child.

Kenneth Rigby, *1993 Custody and Child Support Legislation*, 55 La. L.Rev. 103, 105 (1994). The author

further noted that the test shifted from "a negative to a positive one, from why joint custody to both parents is not in the child's best interest to why sole custody in a particular parent is in the child's best interest." *Id.* (Emphasis in original).

*Harper v. Harper*, 33,452, pp. 4-5 (La.App. 2 Cir. 6/21/00), 764 So.2d 1186, 1189-90 (footnote omitted).

Here, Donald argues that Mia failed to prove by clear and convincing evidence that sole custody was in the children's best interest.

In its written reasons for judgment, the trial court stated, in part:

It seemed obvious to the Court, and more particularly on this hearing of June 23, 2009, that Laura Dooley is the one pushing for all of the things that she wants concerning the minor children. It is obvious to the Court and the testimony of Donald Dooley indicates that whatever she is asking and recommending is okay with him. It is obvious to the Court now and has also been obvious to the Court in the past that Donald Dooley has very little to do with any decisions made relative to these children. It is also obvious to the Court that Laura Dooley is the one who takes over completely with the children when they visit the Dooley residence. The e-mails to Mia Dooley indicate that. There are hardly any e-mails from Donald to Mia relative to the children. Obviously, Donald Dooley has relinquished his parental authority to Laura Dooley and goes along with whatever Laura Dooley wants.

The Court also did not hear any testimony from Donald Dooley as to why the children should be with him more frequently and what he can offer the children that is not being offered to them by their mother. All of the testimony at the hearing on June 23, 2009 concerned the desires and wishes of Laura Dooley relative to herself and the minor children. There was no testimony from Donald Dooley relative to the interaction between himself and the children or his desires and abilities to have the children with him subject to his authority. Donald Dooley has indicated, both in this hearing and in previous hearings, that in fact, he has delegated to Laura Dooley all of the concerns, communication, instruction and decisions with reference to his two children. . . . There is no indication from Donald Dooley that he is capable of having a relationship with the children and that his mental facilities are sufficient and capable for him to have a meaningful relationship at this point in time with his children. In fact, the testimony at the hearing would indicate that he has considerable mental problems relative to communicating and thought processes.

. . . .

6

This Court has been dealing with these parties for many years. From the very beginning and all throughout these proceedings, the fly in the ointment has been Laura Dooley. Laura Dooley has evidenced to this Court that she wants to do what she wants. She will do whatever she has to do in order to get what she wants relative to these children. She has tried to manipulate the children and Mia Dooley with her ideas of God, what is right and wrong, and God being on the side of Laura and Donald Dooley. Additionally, she is in total control of Donald Dooley. He has very little constructive to say or do as he testified throughout these proceedings and has not really asserted anything on behalf of himself or the children. Laura Dooley is in complete charge of that marriage and household.

. . . .

[B]ecause of the mental condition of Donald Dooley and his complete control by Laura Dooley, the Court does not believe that Donald Dooley can assert sufficient control over Laura Dooley to have these children visit with him. To begin with, he has allowed her to impress her beliefs, criticisms, religion, hatred and vengeance upon these children. He either cannot or will not prevent her from destroying these children and putting them under extreme stress and worry.

At the hearing, both Mia and Laura testified that they began communicating with each other, through email, in 2007 and 2008. The record indicates that, for a period of time, the two were amiable towards one another. However, Mia testified that, as a result of lenient "visitation" with Laura and Donald, the children would come home "withdrawn" and "upset." Mia testified that Laura sent her numerous emails alleging that the children desired for their parents to exercise a week-to-week custody schedule. Laura confirmed in her testimony that she sent Mia numerous emails and posted certain statements on the internet for the public to see referring to Mia as the "enemy."

Luke Lucas, a licensed professional counselor accepted as an expert by the trial court, also testified at the hearing and explained that he was familiar with Laura's emails and internet postings. He stated that he believed the children's relationship with their stepmother was unhealthy. Mr. Lucas further testified that Laura's conduct

7

"influences [the children's] beliefs as to what they think is right and wrong and what they should and shouldn't do and who's right and who's wrong. And they may not be affected totally today, but in 10-15 years they're going to be dealing with a lot of stuff." He related that it was unhealthy for Laura to refer to the children as "my babies" and make comments to the children that "I can't wait for you to come home." Mr. Lucas opined that the children were confused as to where "home" was because of Laura's statements. He testified that home "would be with the custodial parent, the one they spend most of their time with."

Mr. Lucas further testified that the children expressed to him that they loved both parents. He stated that in his second session with the children, "we all agreed that they [Laura and Donald] should get a - - maybe another day during the week to have them with them. But with the bombardment of all the letters and constant information being in front of them, I would say no, that it [the custody agreement] should stay the same."

In brief, Donald argues that the trial court erred in not accepting Mr. Lucas's testimony that while Laura's contact with the children should be limited, that the custody as it stood, joint custody, "should otherwise stay the same." As explained above, the trial court is in a better position to evaluate the best interest of the child from its observations of the witnesses; thus, a trial court's determination in child custody cases is entitled to great weight on review. *D.R.S. v. L.E.K.,* 33 So.3d 428. This great discretion and deference granted to the trial court on review extends to its assessment of expert testimony. *Dupre v. Dupre*, 02-902 (La.App. 3 Cir. 12/30/02), 834 So.2d 1272. The trial court is not bound by expert testimony and remains free to accept or reject an expert's conclusions. *Slayton v. Slayton*, 05-1529 (La.App. 3

8

Cir. 5/3/06), 929 So.2d 865. Here, the trial court could permissibly reject Mr. Lucas's testimony concluding that joint custody should be maintained.

After review, we find that the trial court's determination that Mia proved by clear and convincing evidence that sole custody was in the best interest of the children is supported by the record. The record reveals that the children were confused as to what "home" was, and, according to Mr. Lucas's testimony, it was in their best interest to have that clarified and supported by the parties. It also indicates that the parties, under the previous custody arrangement, had trouble representing to the children what constituted home. In its reasons for judgment, the trial court considered this confusion and determined that the children were to have one home, "with their mother." In its judgment, the trial court took into account the testimony establishing Laura's interference with the children and what detrimental effect that interference was having upon the children. Further, the trial court took into account that Donald evidenced a lack of desire or ability to shield the children from Laura's interference, "putting them under extreme stress and worry." It found that Donald did not testify "relative to the interaction between himself and the children or his desires and abilities to have the children with him subject to his authority."

Accordingly, we find that the trial court acted within its discretion in determining that it was in the best interests of the children to award Mia sole custody.

*Visitation*

Donald also asserts that it was error for the trial court to terminate his visitation.

Louisiana Civil Code Article 136(A) states that "A parent not granted custody or joint custody of a child is entitled to reasonable visitation rights unless the court

9

finds, after a hearing, that visitation would not be in the best interest of the child."

In her "Rule for Change of Custody and Contempt," while Mia asked that Laura's contact with the children be prohibited, she asked for sole custody of the children, with Donald only being granted supervised visitation. Mia acknowledged in her testimony that the children wanted to spend time with their father. Further, Mr. Lucas acknowledged that the children love their father.

The record reveals that Mia did not ask for the termination of Donald's visitation rights, and there was no testimony that supervised visitation would not be in the best interest of the child. As such, we reverse that portion of the judgment denying Donald's visitation to the children and remand to the trial court in order to implement a schedule of supervised visitation. *See Bradley Griffith v. Resa Latiolais*, 10-754 (La. 10/19/10), __ So.3d ___ (wherein the supreme court noted that it was error for the trial court to grant the defendant sole custody of the minor child while the record did not indicate that the defendant asked for sole custody in her pleadings.)

*Motion to Strike*

Mia also filed with this court a "Motion to Strike Improper Attachment" alleging that Donald, in brief to this court, attached the trial court's written reasons for judgment which "contains handwritten observations, pithy comments and other marginalia, which is improper and should not be contained[.]" In accordance with Uniform Rules–Courts of Appeal, Rule 2-12.4, a copy of the trial court's reasons for judgment shall be attached to the appellant's brief. After review of the appellant's brief, we find no support for Mia's allegations that Donald added comments or other marginalia to the trial court's reasons for judgment. As such, the motion to strike is denied.

**DECREE**

For the foregoing reasons, the trial court's judgment is reversed to the extent it terminated Donald Dooley's visitation of the minor children. The judgment granting Mia Dooley sole custody is affirmed, and the matter is remanded to the trial court for implementation of a schedule of supervised visitation with Donald Dooley. The appellee's motion to strike is denied. All costs of these proceedings are assessed equally between Mia Dooley and Donald Dooley.

**REVERSED IN PART; REMANDED IN PART; AFFIRMED IN PART. MOTION TO STRIKE DENIED.**