GENOVESE, Judge.
Ijn this domestic matter, the mother appeals the trial court’s designation of the father, her former husband, as the domiciliary parent of their two sons and permitting him to relocate the minor children’s residence to Texas. For the following reasons, we affirm the judgment of the trial court in its entirety.

FACTS

Dawn Cheryl Petersen married Oscar Guevara Perez on May 22, 1999. Two children were born of the marriage, Oscar Guevara Perez, Jr. (born April 2, 2000), and Sebastian Chong Perez (born May 28, 2001). The parties were divorced on June 25, 2007. No custody orders were issued by the trial court. Rather, by agreement of the parties, the children lived with Dawn in Leesville, Louisiana, while Oscar continued his employment in Iraq.[1]
In March of 2007, the two children began living with their paternal grandmother in Oscar’s home, also located in Leesville, Louisiana. When Oscar returned from Iraq in November 2007, his mother moved out of his house, and Oscar moved back into his home along with his two children. The children have continued to reside with Oscar since his return from Iraq.
In 2008, Dawn sought employment in Iraq. Her employment began in November of 2008, and was expected to continue through November of 2010.[2]
During 2008, Oscar met Marie Perez. In February of 2008, Marie and one of her sons[3] moved into Oscar’s home along with Oscar and his children. Oscar and Marie got married at the end of April, 2008. In 2009, Oscar moved to Conroe, Texas. For the remainder of the school year, Marie and the children moved into |2Oscar’s mother’s home, and Marie and the children commuted to Conroe on the weekends to be with Oscar.
In December of 2009, while Dawn was in Iraq, Oscar sent her notice of his intention to relocate the residence of the children to Texas. Dawn filed an objection to the relocation on January 8, 2010. The trial court issued a temporary restraining order prohibiting the relocation, set a hearing date for the injunction, and appointed Dr. John Simoneaux to perform psychological evaluations. On May 20, 2010, the trial court dismissed the injunction. Oscar then relocated the children to Texas.
Trial in this matter began on September 28, 2010, and resumed on October 7, 2010, for the taking of Dr. Simoneaux’s testimony. After taking the matter under advisement, the trial court issued Written Reasons and signed a Judgment on Rule and Implementation Plan for Joint Custody granting the parties joint custody, designating Oscar as the domiciliary parent, and permitting the relocation of the children to Texas. Dawn appeals.

ASSIGNMENTS OF ERROR

On appeal, Dawn asserts that “[t]he trial court erred in making Oscar Perez the domiciliary parent of the minor children.” Additionally, she contends that “[t]he trial court erred in permitting Oscar Perez to *276 relocate the minor children’s residence to Texas.” The trial court’s ruling on joint custody was not appealed.

LAW AND DISCUSSION

Domiciliary Status

In designating the domiciliary parent for purposes of a joint custody determination, the best interest of the children is paramount. In making this determination, a trial court is guided by La.Civ. Code art. 134, which provides as follows:
| oThe court shall consider all relevant factors in determining the best interest of the child. Such factors may include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
After hearing the evidence in this case, the trial court issued Written Reasons wherein he concluded that “[i]n carefully considering all of the factors of Article 134 and the testimony of the parties, it appears that the best interest of these children would be served by allowing them to stay in the environment that they are now enjoying.” The trial court noted that the children have been in Texas, where they are enrolled in school and doing well. “Both are making good grades and are |4happy with their situation.” They reside, along with their father, step-mother, and her son, in a four-bedroom home. The children also “have a very good relationship with their step-mother.” The family attends church and both children have been baptized.
On the other hand, Dawn’s future, including her employment and her living arrangements, are much more uncertain. She is currently living with her sister’s family and, while she is a student at Northwestern State University, she is not employed. Additionally, the trial court noted that Dawn was in a relationship and testified that she will probably marry a man who lives in Lufkin, Texas. Although she testified that she hoped to remain in Louisiana, that was dependent on job opportunities.
We also note the trial court’s decision not to adopt the opinion of Dr. Simoneaux. Dr. Simoneaux testified in detail at trial, being questioned by both counsel as well as the trial court judge. The trial court’s *277 Written Reasons confirm that Dr. Simo-neaux’s opinion was carefully considered. However, the trial court expressly noted that it did “not feel that Dr. Simoneaux was apprised of some important facts that may have changed his opinions and cannot follow his recommendations.”
Although relevant, a trial court has much discretion in determining the weight to be given expert testimony, and it is free to accept or reject the opinion expressed by any expert. See Dooley v. Dooley, 10-785 (La.App. 3 Cir. 2/2/11), 55 So.3d 985. This is particularly true when, as in the instant matter, the expert is not apprised of all the relevant facts. In this case, it is noteworthy that although he expressed the opinion that the children should remain in Vernon Parish, Dr. Simoneaux had not interviewed the parties for approximately five months before the hearing, and he admitted that he did not revisit this case since that initial | ¡¡interview occurred. Dr. Simoneaux, also, was not present in the courtroom during the first day of trial when all of the other witnesses testified.[4]
We find that the trial court’s consideration of the relevant factors set forth in La.Civ.Code art. 134, as expressed in its Written Reasons, are reasonably supported by the record. Therefore, we find no error with the trial court’s best-interest determination or its designation of Oscar as the domiciliary parent.

Relocation to Texas

This court, in Cass v. Cass, 10-327, pp. 3-4 (La.App. 3 Cir. 11/17/10), 52 So.3d 215, 218-19, writ denied, 11-178 (La.2/25/11), 58 So.3d 460, recently stated the following relative to issues of relocation:
A parent seeking relocation must prove two things: (1) that the proposed relocation is in good faith and (2) that the proposed relocation is in the best interest of the child. La.R.S. 9:355.13. Louisiana Revised Statutes 9:355.12 enumerates factors the trial court shall consider in deciding a contested relocation, as follows:
(1) The nature, quality, extent of involvement, and duration of the child’s relationship with the parent proposing to relocate and with the nonrelocating parent, siblings, and other significant persons in the child’s life.
(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child’s physical, educational, and emotional development, taking into consideration any special needs of the child.
(3) The feasibility of preserving a good relationship between the nonre-locating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.
(4) The child’s preference, taking into consideration the age and maturity of the child.
(5) Whether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the nonrelocating party.
|fi(6) Whether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity.
(7) The reasons of each parent for seeking or opposing the relocation.
(8) The current employment and economic circumstances of each parent *278 and whether or not the proposed relocation is necessary to improve the circumstances of the parent seeking relocation of the child.
(9) The extent to which the objecting parent has fulfilled his or her financial obligations to the parent seeking relocation, including child support, spousal support, and community property obligations.
(10) The feasibility of a relocation by the objecting parent.
(11) Any history of substance abuse or violence by either parent, including a consideration of the severity of such conduct and the failure or success of any attempts at rehabilitation.
(12) Any other factors affecting the best interest of the child.
This statute mandates that the trial court consider the enumerated factors; however, it does not require the court to give preferential consideration to any certain factor. Curole v. Curole, 02-1891 (La.10/15/02), 828 So.2d 1094. A trial court’s determination in a relocation dispute is entitled to great weight and will not be overturned absent a clear showing of abuse of discretion. Id. Further, a reviewing court may not set aside a trial court’s factual findings in the absence of manifest error or unless it is clearly wrong. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). A two-tiered test must be applied in order to reverse the trial court’s findings: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the trial court’s findings, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). Richardson v. Richardson, 09-609 (La.App. 3 Cir. 11/18/09), 25 So.3d 203, citing Mart v. Hill, 505 So.2d 1120 (La.1987). On review, if the trial court’s findings are reasonable based upon the entire record, the reviewing court may not reverse even if it is convinced that had it been sitting as the trier of fact it would have weighed the evidence differently. Id.
|vAs this court has noted, La.Civ.Code art. 134 “supplements and to a great extent overlaps with La.R.S. 9:355.12.” Miller v. Miller, 01-356, p. 5 (La.App. 3 Cir. 10/31/01), 799 So.2d 753, 756. In the instant matter, as with the issue of domiciliary status, we find that a reasonable factual basis exists for the trial court’s ruling on the issue of relocation. Without a recitation of the facts relative to each factor delineated in La.R.S 9:355.12, we find no manifest error in the trial court’s determinations. Considering the evidence in the record, we find no abuse of the trial court’s discretion in concluding that the evidence weighs in favor of relocation of the children to Conroe, Texas, with Oscar.
The extent of involvement and the duration thereof of the children’s relationship with their father is significant. Even while in Iraq, Oscar maintained communication with his children. Curiously, for reasons not explained in the record, beginning in March of 2007, while Oscar was still in Iraq, instead of remaining with Dawn, the two children went to live with Oscar’s mother until he returned in November, 2007. Upon Oscar’s return, the children resided with him, which they have continued to do to date. The ability of preserving the relationship of the children with their mother is feasible despite some distance between the parties. Although Oscar did not historically and actively promote the relationship between the children and their mother, leaving that to a great extent to her to initiate or for the children to request, he did not thwart that relation *279 ship. The overall impact of the relocation on the children has been positive, and the quality of life that the children enjoy in Conroe has been established.
Perhaps most importantly, the stability which a life in Conroe provides for the children is very significant. They reside in a four-bedroom home with their father, stepmother, and her son. Marie does not work and cares for the children after school. Their father works and is home every evening, helping with | ^homework and playing with the children. The children are doing well in school and even showing more of an interest in school. Moreover, they have, in fact, been in this stable and positive environment since May of 2009.
To the contrary, allowing the children to reside in Leesville would not provide the same stability and is replete with unknowns. Dawn currently resides with her sister and her family. Dawn testified that she would “get her own place” if the children were to reside with her; however, she provided no details, and she has no income. Although Dawn is a full-time student, her education and employment future remain completely uncertain. Further, Dawn testified that she was in a relationship with a man who resided in Texas and that she anticipated that they would get married. Even if these plans came to fruition, Dawn was unable to say with any reasonable degree of certainty whether they would reside in Texas or in Louisiana, that being dependent on future employment opportunities.
Finally, this court again acknowledges the opinion expressed by Dr. Simoneaux that the children should remain in Lees-ville. However, Dr. Simoneaux had performed his interviews and evaluation of these parties approximately five months before the hearing. He had not performed any further evaluations since the children had moved to Texas, and circumstances had already changed considerably. Additionally, Dr. Simoneaux was not present in court on the first day of the hearing to hear and consider the evidence and testimony of all the other witnesses. At the time he provided his testimony to the trial court, Dr. Simoneaux had only been provided with Oscar’s testimony from the first day of trial. Thus, it is clear that Dr. Simoneaux did not have all of the current relevant facts available at the time that he reiterated his initial opinion on the second day of trial.
LFor the foregoing reasons, considering the evidence of record, we find that the trial court did not abuse its discretion in designating Oscar as the domiciliary parent of the two minor children. Likewise, we find no abuse of the trial court’s discretion in permitting the relocation of these children to Texas.

DECREE

For the foregoing reasons, the judgment of the trial court is affirmed in all respects. The costs of this appeal are assessed to Plaintiff/Appellant, Dawn Cheryl Perez.
AFFIRMED.
KEATY, J., dissents and assigns written reasons.
COOKS, J., dissents for the reasons assigned by Judge KEATY.

. Oscar was employed as a heavy equipment foreman in Iraq for approximately four years.

. According to her testimony, Dawn actually returned from Iraq in April of 2010.

.Marie’s oldest son lived with his biological father in Pearland, Texas. He, too, later came to live with Marie, Oscar, and Oscar’s children for a period of time.

. Dr. Simoneaux had been provided with a transcript of the trial testimony of Oscar.